Toomey, J.
Plaintiffs, Ann Smith (“Ms. Smith”) and Glen Smith (“Mr. Smith”), brought this action alleging wrongful termination, breach of contract, intentional *519 or negligent infliction of emotional distress and loss of consortium. Defendant, Fallon Clinic, Inc. (“Fallon”), has moved to dismiss the complaint[1] on the ground that plaintiffs cannot bring a suit against it as Ms. Smith signed a general release of all claims when she accepted Fallon’s offer of severance pay. Plaintiffs respond that the release is invalid and the terms of the release do not cover plaintiffs’ causes of actions. For the reasons set forth below, Fallon’s motion is allowed.
BACKGROUND
The following facts are undisputed. Since 1985, Ms. Smith worked for Fallon as a registered nurse. On March 28, 1996, Ms. Smith received a letter indicating that her position with Fallon was terminated as of April 11, 1996 as part of a reduction in force (“RIF”). At the time of her discharge, Ms. Smith was working in “Pulmonary/Allergy/IV Department” as a Senior Nurse. The April 11, 1996 letter offered Ms. Smith a severance package — which included eight weeks of salary and the option to continue her participation in the company’s group health plan for eight weeks — in exchange for her acceptance of an agreement enclosed with the letter. That agreement contained a broad general release, which provided that Ms. Smith would agree to:
release and forever discharge the Company... and all of their respective past and present officers, directors, shareholders, employees, agents, ... individually and in their official capacities, from any and all causes of action, rights, claims that [she has] had in the past, now [has] or might now have, in any way related to, arising out of or connected with [her] employment and its termination or pursuant to any federal, state, or local employment laws, regulations or other requirements, including but not limited to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act and the Massachusetts fair employment practices statute, each as may be amended . . . [and] . . . promise and agree that neither [she] nor any of [her] heirs, representatives or assigns will ever assert in any forum any cause of action, right or claim as to which this release of claims may lawfully be applied.
Ms. Smith had forty-five (45) days (until April 21, 1996) to accept the severance package; however, she received an extension to May 10, 1996 and ultimately signed it on May 17, 1996.
In March 1997, plaintiffs brought the present action by serving Fallon with a four count complaint alleging, respectively, (I) wrongful termination, (II) breach of contract, (III) intentional or negligent infliction of emotional distress, and (IV) loss of consortium.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the moving party will not have the burden of proof at trial, the movant may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion . . .” Pederson, 404 Mass. at 17.
I. THE RELEASE
Fallon contends that the general release signed by Ms. Smith bars plaintiffs’ causes of actions. Additionally, Fallon claims that plaintiffs cannot prove that Ms. Smith was wrongfully discharged, that plaintiffs are barred from alleging intentional or negligent infliction of emotional distress by operation of the exclusivity provisions of the workers’ compensation statute, and that Mr. Smith’s loss of consortium claim fails because Ms. Smith’s claims are barred by the release. Plaintiffs, on the other hand, argue that the release is invalid as Ms. Smith was fraudulently induced to sign the release and that, even if the release is valid, the terms of the release do not cover plaintiffs’ causes of action.
The release at issue is broad and general. By its terms, the release is applicable to all claims, whether known or unknown at the time Ms. Smith signed the release, arising out of her employment and termination. See Schuster v. Baskin, 354 Mass. 137, 140 (1968), Naukeag Inn, Inc. v. Rideout, 351 Mass 353, 356 (1964). Accordingly, if the release is valid, it would cover, and thus bar, each of the counts plaintiffs have alleged in their complaint. The determinative question on summary judgment is, therefore, whether the release is valid.
A. Duress
Plaintiffs have not demonstrated that the release was secured by duress. See Cormier v. Central Mass. Chp. of Nat’l Safety Council, 416 Mass. 286, 288 (1993); Schuster v. Baskin, 354 Mass. 137, 141 (1968). ‘To avoid a contract on the basis of duress, a party must show that conduct by the other party caused [her] to enter into the contract ‘under the influence of such fear as precludes [her] from exercising free will and judgment.’ ” Coveney v. Pres. & Trustees of College of Holy Cross, 388 Mass. 16, 22 (1983), quoting *520 Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962). Here, the only allegations plaintiffs make regarding duress are that Ms. Smith was forced to sign the release in order to receive any severance pay and that Fallon incorrectly calculated Ms. Smith’s severance benefits. Plaintiffs’ claim is essentially one of economic duress. The law requires that, in order for plaintiffs to prevail upon a claim of economic duress, plaintiffs must show that “the duress resulted from defendant’s wrongful and oppressive conduct and not by plaintiffs necessities." International Underwater Contractors, Inc. v. New England Tel. & Tel. Co., 8 Mass.App.Ct. 340, 342 (1979), quoting W.R. Grimshaw Co. v. Nevil C. Withrow Co., 248 F.2d 896, 904 (8th Cir. 1957). “Merely taking advantage of another’s financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.” International Underwater Contractors, Inc., 8 Mass.App.Ct. at 342, quoting 13 Williston, Contracts §1617, at 708 (3d ed. 1970); McTernan III v. Haley & Aldrich, Inc., Civil No. 95-5905, 4 Mass. L. Rptr. No. 20, 430, 432 (Middlesex Super. Ct. September 25, 1995). The focus, then, is upon the defendant’s conduct and is not driven by the plaintiffs’ privation.
Plaintiffs have failed to allege or proffer any evidence that Fallon contributed to or in any way caused Ms. Smith’s financial impecuniousness. See McTernan, 4 Mass. L. Rptr. No. 20 at 432. Any miscalculation as to Ms. Smith’s benefits could not have contributed to or caused her financial difficulties because any such miscalculation could only have affected her financial situation after the agreement became effective and Fallon began to pay her less benefits than those to which she was entitled.
Plaintiffs’ allegations are, without more, insufficient to show duress such that Ms. Smith was unable to exercise her free will and judgment.[2] Furthermore, Ms. Smith’s consultation with an attorney and repeated negotiations with Fallon for extensions on the deadline for signing the release demonstrates her exercise of free will and judgment in executing the release. The summary judgment materials at bar lend no support to plaintiffs’ claim that the release was procured under duress.
B. Fraud
In order to prove that Fallon fraudulently induced her to sign the release, Ms. Smith will need to show at trial that (1) Fallon made a misrepresentation, (2) of material fact, (3) with knowledge of its falsity, and (4) she relied upon it. See Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963). At bar, plaintiffs have produced no summary judgment items that demonstrate a genuine issue of material fact with respect to their claim of fraud.
Plaintiffs assert that Fallon misrepresented that Ms. Smith’s termination was effective April 11, 1996. Plaintiffs characterize the statement regarding the effective date of her termination as false because Ms. Smith could not in fact be discharged due to her seniority privileges under Fallon’s “reduction in force” policy (“RIF policy”).[3] Fallon, however, did not engage in any misrepresentation when it stated that it could terminate Ms. Smith immediately and that her discharge was effective April 11, 1996. The RIF policy did not constitute an employment contract, and Ms. Smith remained, at all times relevant hereto, an employee at-will subject to termination at any time, shielded only by a few, narrow protections.
A policy or personnel manual may constitute an employment contract or may be incorporated into such a contract. O’Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 691-94 (1996). In Jackson v. Action for Boston Community Develop., Inc., 403 Mass. 8 (1988), the Supreme Judicial Court suggested certain factors that a court might consider in determining whether or not such a manual might be enforceable in contract. Those factors, which are not to be employed by the court as a checklist, but rather as a guideline, include: whether the employee and employer negotiated over the terms of the manual, whether the employer can unilaterally alter the manual, and whether the employee signed the manual. O’Brien, 422 Mass. at 692.
Here, the policy at issue had never been distributed to Ms. Smith or other nonmanagement employees. Fallon, through its submission of an affidavit, attested that the RIF policy was distributed only to management employees, was a guideline and not a mandate, and was not part of an employee handbook. Plaintiffs do not dispute that Fallon’s RIF policy is distributed only to management level employees. In fact, Ms. Smith admits in her affidavit that she had never known or been informed of such a policy until months after her discharge. There is no evidence that Fallon’s RIF policy was discussed with Ms. Smith when she was first hired or that this policy was even followed on a regular basis by Fallon. All of these factors demonstrate that Fallon’s RIF policy did not constitute a contract or part of a contract of employment with Ms. Smith. The summary judgment record is completely devoid of any suggestion to the contrary. Accordingly, Ms. Smith was not contractually protected from termination by this RIF policy and Fallon’s assertion that she could be terminated at any time, specifically April 11, 1996, was not a misrepresentation. In addition to their claims of duress and express fraud, plaintiffs assert that Fallon failed to inform Ms. Smith of the RIF policy, and, had she known about it, she would never have signed the release. Plaintiffs contend, at bottom, that Fallon’s silence fraudulently induced Ms. Smith to execute the release.
Fallon had no duty, however, to disclose its RIF policy to plaintiffs because the policy was employed by management level employees only as a guideline and did not confer contractual rights on Ms. Smith. See *521 Chiarella v. United States, 445 U.S. 222, 235 (1980) (nondisclosure does not constitute fraud unless defendant has a duty to speak or disclose information and has failed to do so). Plaintiffs cite no cases recognizing a duty upon an employer to disclose administrative policies that do not form a contract or part of a contract governing a person’s employment. Accordingly, the release is valid, and, because its terms cover each of plaintiffs’ claims, summary judgment will be allowed for the defendant.
II. THE SUBSTANTIVE CLAIMS
Even assuming, arguendo, that a question of fact existed regarding the validity of the release thus rendering summary judgment inapposite on that ground, plaintiffs cannot maintain their causes of action.
Count I of plaintiffs’ complaint alleges wrongful discharge in violation of the covenant of good faith and fair dealing. An employer violates the implied covenant of good faith and fair dealing, which arises from every employee at-will relationship, when the employer (1) discharges an employee in order to deprive that employee of rights that have already vested or (2) discharges an employee in violation of a well-defined public policy. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 665-69 (1981); Glaz v. Ralston Purina Co., 24 Mass.App.Ct. 386 (1987), rev. denied 400 Mass. 1106. Plaintiffs have not demonstrated, in their summary judgment submissions, any genuine issue of material fact as to either of those factors. They have thus failed to support a claim that Fallon violated the implied covenant of good faith and fair dealing.
There is no showing that Ms. Smith was deprived of any vested rights or compensation due her. Contrast Gram, 384 Mass. at 665-69; Fortune v. National Cash Register Co., 373 Mass. 96 (1977). Plaintiffs also have failed to allege any well-established public policy that Fallon may have violated. An employer violates public policy when an employee is terminated for (1) “asserting a legally guaranteed right," (2) “doing that which the law requires,” or (3) "refusing to do that which the law forbids.” Smith-Pfejfer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50. Plaintiffs have not claimed, and the record does not suggest, that Ms. Smith was discharged for obeying the law or for refusing to commit an unlawful act. The only plausible suggestion in the record intimating that Fallon may have violated any public policy is the possibility that Ms. Smith was discharged because she asserted a legally guaranteed right.
Plaintiffs do not, however, contend that Ms. Smith was terminated in retaliation for her filing a workers’ compensation claim regarding a 1995 incident, which she claims exposed her to the HIV virus, or that her workers’ compensation claim was in any way the conception of her discharge. In any event, were plaintiffs to advance such a common-law cause of action, the claim would be barred as preempted by G.L.c. 151, §75B. Ourfalian v. Aro Manufacturing Co., 31 Mass.App.Ct. 294, 297-298 (1991) (no common-law cause of action for retaliatory discharge for filing a workers’ compensation claim as G.L.c. 151, §75B is the exclusive remedy for such a cause of action). Furthermore, plaintiffs’ assertion that Ms. Smith was terminated in violation of Fallon’s alleged layoff policy does not constitute a basis for a claim of wrongful discharge because “internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause.” King v. Driscoll, 418 Mass. 576, 583 (1994). See also Smith-Pfeffer, 404 Mass. at 151; Mello v. Stop & Shop Cos., 402 Mass. 555, 560-61 (1988). In the instant case, Fallon’s RIF procedures, if any, are internal company matters, not involving any public policy. Plaintiffs have failed, therefore, to demonstrate any genuine issue of material fact in connection with the wrongful discharge claim, and Fallon must be awarded summary judgment on Count I. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991).
Count II of plaintiffs’ complaint alleges that Fallon breached a contract with Ms. Smith by failing to follow its policies and procedures set forth in its RIF policy when it terminated Ms. Smith. Although defendant does not challenge the merits of that Count, contenting itself with its “release” position (which, in fact, prevailed, supra), the Court notes that Count II would, if attacked substantively, likely fail as a matter of law. As discussed above, Fallon’s RIF policy is not a contract or part of a contract with Ms. Smith. The policy is merely a guideline distributed to management officials to aid them in determining the procedures to follow when a lay-off is required. Accordingly, as Ms. Smith was, at all relevant times, an employee at-will, there was, as to her, no contract for Fallon to breach. The Court need not reach this question in a dispositive context, however, as it was not addressed by the parties, and, in any event, the Court found the release to be valid, thereby barring the cause of action proffered in Count II.
Count III of plaintiffs’ complaint states a cause of action for negligent or intentional infliction of emotional distress. That count alleges that Ms. Smith suffered an injury during her employment, a period which includes the act of termination. The workers’ compensation statute, however, precludes such a cause of action. G.L.c. 152, §24 (“exclusivity provision”). Negligent or intentional infliction of emotional distress, if suffered during employment, can only be addressed against an employer through the workers’ compensation process. Id. G.L.c. 152, §1 (7A). Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377, 378-81 (1994), rev. denied 419 Mass. 1101 (claim for negligent infliction of emotional distress arising out of personnel actions, whether bona fide or not, barred by the exclusivity clause of *522 the Workers’ Compensation Act); Mullen v. Ludlow Hosp. Soc., 32 Mass.App.Ct. 968, 970 (1992) (rescript opinion) (claim for intentional infliction of emotional distress arising out of personnel actions, including termination, barred by the exclusivity clause of the Workers’ Compensation Act), rev. denied 413 Mass. 1103. Count III cannot, therefore, proceed.
Count IV, Mr. Smith’s loss of consortium claim fails because its predicate, Ms. Smith’s wrongful discharge and negligent or intentional infliction of emotional distress causes of action, does not survive summary judgment. See Mouradian v. General Elec. Co., 23 Mass.App.Ct. 538 (1987), rev. denied 399 Mass. 1105. Although a spouse’s right to recover for loss of consortium is an independent remedy, Feiriter v. Daniel O'Connell’s Sons, 381 Mass. 507, 529-30 (1980), any recovery for loss of consortium must be based on a claim that a tortious act caused injury to a spouse. Mouradian, 23 Mass.App.Ct. 538. See also Agis v. Howard Johnson Co., 371 Mass. 140, 146 (1976). For the reasons already discussed, no valid tort claim is alleged by Ms. Smith, and Mr. Smith’s loss of consortium claim, resting as it does on an insubstantial foundation, must fail as a matter of law. Mouradian, 23 Mass.App.Ct. at 544.
CONCLUSION
Not only does defendant prevail on its “release” contentions, but its assault on the substance of plaintiffs’ causes of action is irresistible. There are no genuine issues of material fact to be tried and, accordingly, defendant must have summary judgment on all counts of the complaint.
ORDER
It is hereby ORDERED that Fallon’s Motion for Summary Judgment is ALLOWED.

 At the hearing on March, 12, 1998, the parties agreed to treat defendant’s motion to dismiss as a motion for summary judgment. Accordingly, this Court has been presented with and will consider materials outside of the pleadings. Under the circumstances, there is no need to afford any party an opportunity to upgrade its submissions to summary judgment levels. See Mass.R.Civ.P. 12(b).

 Ms. Smith’s supplemental allegation in Plaintiffs’ Response to Defendant’s Reply Brief to the effect that she may have contracted the HIV virus in an incident in 1995, and that fact, in conjunction with other circumstances, amounted to duress is wholly speculative and completely without merit.

 Defendant claims that the policy submitted by plaintiffs was not in effect at the time of Ms. Smith’s termination and submits a different policy which it states represents the policy in effect at the relevant time. This Court’s analysis is the same regardless of which policy was in effect, and, therefore, the Court need not decide which policy was effective.