Donohue, J.
On June 18, 2001, this civil matter was before the court for hearing on the motion of the defendant, Fallon Clinic, Inc. (“Fallon”), for summary judgment. See Mass.R.Civ.P. 56. Plaintiff Robert L. Cathey (“Cathey”), a former Fallon employee, filed this action alleging that (1) Fallon discriminated against him on the basis of age in violation of M.G.L.c. 15 IB, §4(1) when it eliminated his position in October of 1995, and (2) Fallon retaliated against him by withdrawing its severance offer because he filed claims against Fallon with the Massachusetts Commission Against Discrimination (“MCAD”). In its motion, Fallon argues that it is entitled to summary judgment as to both of Cathey’s claims, because (1) Cathey’s age discrimination claim is preempted in its entirety by the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. (“ERISA”), and (2) Fallon’s failure to pay Cathey severance benefits did not constitute retaliatory conduct. In his opposition to the motion for summary judgment, Cathey argues to the contrary. For the reasons stated below, summary judgment will ENTER for the defendant.

STATEMENT OF THE CASE

The following facts are undisputed in the summary judgment record.
From 1979 to 1995, plaintiff Robert L. Cathey was employed by the defendant, Fallon Clinic, Inc., in the position of Controller. Cathey was an at-will employee. His responsibilities involved, among other things, the area of pensions, malpractice insurance, and documentation of the company’s financial position. On October 1, 1995, Cathey was terminated from his position at Fallon Clinic, and was told that the reason was Fallon Health Care System’s need to decrease its expenses. As of October 1, 1995, Cathey’s salary was approximately $95,000.00 per year, and he was sixty-three years of age. Cathey’s position was later filled by the assistant controller.
Cathey received a letter from Fallon on October 3, 1995, offering him severance benefits pursuant to certain conditions.[1] The letter stated, in relevant part, that Cathey’s receipt of severance benefits was conditioned upon certain terms, including his agreement not to seek legal action against Fallon as to his termination, and his signing of the letter within forty-five days. Cathey and Fallon discussed the terms of.the severance offer, and on November 3, 1995, Cathey received a slightly revised version of the October 3, 1995 letter. The November 3, 1995 letter retained the same time line stated in the October 3, 1995 letter. On December 13, 1995, Cathey’s attorney informed Fallon that Cathey had refused to sign the agreement letter, and had filed a claim with the MCAD. Fallon subsequently withdrew its severance offer.

*326
DISCUSSION

Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
In opposition to Fallon’s motion for summary judgment, Cathey has submitted legal memoranda and the affidavit of Robert Cathey. The issues presented are (1) whether Cathey’s age discrimination claim is preempted by ERISA, and (2) whether Fallon’s withdrawal of the severance offer constituted retaliation in violation of M.G.L.c. 15IB, §4.
1. Cathey’s age discrimination claim is preempted in its entirety by ERISA because the existence of an ERISA pension plan is a critical factor in establishing liability
Cathey claims that although his employment at Fallon was at-will and thus terminable by either himself or by Fallon at any time and for any reason, he is protected under state law pursuant to M.G.L. 15IB, §4(1) because his discharge was motivated by age discrimination. See Jackson v. Action for Boston Comm. Development, Inc., 403 Mass. 8, 9 (1988). Fallon argues that it is entitled to summary judgment as to Cathey's claim of age discrimination because the claim is preempted by ERISA.[2] Cathey contends that ERISA does not bar his claim and that, although he alleged in his deposition that Fallon had pension-defeating motives in terminating him, and although he alleged in both his complaint and in his deposition that he seeks damages pursuant to loss of his pension plan benefits, Cathey now asserts that he is not seeking to recover pension benefits or to prove that Fallon terminated him to avoid its pension obligations to him. See Memorandum in Opposition to Defendant’s Motion for Summary Judgment, at 11.
The Supreme Court has established that a plaintiffs state law claim that his employer terminated him to avoid pension obligations is a claim seeking to enforce a right protected under ERISA §510, and is therefore preempted by ERISA §502(a).[3] See Ingersoll-Rand v. McClendon, 498 U.S. 133, 144 (1990) (where discharged employee filed suit in state court alleging employer’s reduction-in-force was motivated by desire to avoid pension obligations, court held that the claim was preempted by federal law because it fell squarely under ERISA §510 and was therefore subject only to the enforcement scheme set out in ERISA §502(a)). See also Treadwell v. John Hancock Mut. Life Ins. Co., 666 F.Sup. 278, 282-83 (D.Mass. 1987) (ERISA preempted wrongful discharge claim where plaintiff alleged that employer forced him to retire early to deny him pension benefits); see also St. Arnaud v. Chapdelaine Truck Center, Inc., 836 F.Sup. 41, 43 (D.Mass. 1993).
Additionally, state law claims that are not directly implicated under the language of ERISA might nevertheless be preempted by federal law when brought under a cause of action governed by ERISA. The Supreme Court has found that where “the existence of a pension plan is a critical factor in establishing liability under the (s)tate’s wrongful discharge law,” the cause of action can relate “not merely to pension benefits, but to the essence of the pension plan itself.” Ingersoll-Rand at 139-40 (court found that even though plaintiff did not seek pension plan benefits, ERISA preempted claims that were based on employer’s improper pension-defeating motives). See also Fairneny v. Savogran Company, 422 Mass. 469, 476 (1996) (court found ERISA preempted plaintiffs state law-based defamation claims where conduct giving rise to claims was linked to terms of an ERISA plan, because trial of the claims would inevitably have involved testimony regarding the plan provisions). Accordingly, where a cause of action “makes specific reference to, and indeed is premised on, the existence of a pension plan,” and the cause of action “does not focus on [the additional claims] but rather on the employer’s termination decision,” that cause of action is preempted by ERISA and the claims related to it may be preempted as well. Id. at 140, 141.
In this case, ERISA preempts Cathey’s age discrimination claim in its entirety because the summary judgment record shows that the heart of the claim is based on Cathey’s allegation that Fallon discharged him at age sixty-three primarily to reduce its pension obligations to him. In his complaint, Cathey claims, among other things, that he is entitled to damages representing “the difference between the pension benefits the plaintiff would have received if his employment continued until age 65 and the pension benefits he will receive because his employment stopped at age 63 which difference in pension benefits must be multiplied by the plaintiffs life expectancy.” See Pi’s Complt., ¶11. Additionally, during a deposition, Cathey testified as follows:
Q: Let’ me go back to why you believe, sitting here today, you were included in this layoff. You men *327 tioned age. Do you also contend that the reason had anything to do with your pension benefits at Fallon Clinic?
A: Yes.
Q: So it’s your contention that Fallon Clinic terminated your employment in October of 1995 so that it could avoid having to make further contributions to your pension?
A: That’s correct.
Q: Is it your belief that Fallon Clinic was aware of how much pension benefit or pension costs they could avoid by terminating your employment in October 1995, and that’s the reason why they did so?
A: I believe—
MR. HURLEY: Objection.
A: I believe that they could have been aware of that and that it was one element in my termination.
Q: Okay. And your decision to bring this lawsuit was in part to recover the pension benefits that you otherwise would have been entitled to if you had continued your employment at Fallon Clinic?
A: Yes, that was denied me, yes.
See Fallon Clinic, Inc.’s Appendix — Volume II, Cathey Dep. at 454, dated September 29, 1998.
In light of the evidence in the summary judgment record, this Court does not agree with the contention the plaintiff now asserts in his opposition, namely that his age discrimination claim is not preempted by ERISA because he is not seeking to recover his pension benefits or to prove that Fallon’s primary purpose in terminating him was to reduce its pension obligations. See, e.g., Ingersoll-Rand at 145 (“[I]t is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits"). The record shows that Cathey’s age discrimination claim is based in large part on his allegation that Fallon was improperly motivated to discharge him two years before he was due to retire in order to avoid paying his full pension benefits. Thus, the existence of Fallon’s pension plan will likely be a critical factor at a trial on the merits in establishing liability as to all of the allegations Cathey has enumerated under his age discrimination claim, namely loss of pension benefits, loss of income, loss of fringe benefits,[4] the cost of continuing his life insurance policy until his sixty-fifth birthday, and emotional distress. See Pi’s Complt. at ¶¶4-6. Thus, Cathey’s age discrimination claim, which includes the allegations discussed supra, is preempted by ERISA in its entirety, and cannot be tried in state court.
2. Cathey’s retaliation claim fails because he failed to exhaust his administrative remedies and has failed to establish a prima facie case of retaliation
In his complaint, Cathey alleges that Fallon retaliated against him in violation of M.G.L.c. 15IB by failing to pay him benefits due under a severance agreement because Cathey filed a complaint against Fallon with the MCAD. Cathey also alleges, in his complaint, that Fallon violated MG.L.c. 15IB, §4 by conditioning his receipt of severance benefits on an agreement to release any potential claims he might have against Fallon. In its motion, Fallon argues that it is entitled to summary judgment as to these claims because Cathey failed to exhaust his administrative remedies, because conditioning the severance agreement on a release of claims does not violate M.G.L.c. 15IB, §4, and because Cathey has not established a prima facie case showing that Fallon’s conduct constituted retaliation. Cathey has articulated a retaliation claim only in his complaint, and has thus failed to rebut Fallon’s arguments for summary judgment regarding the retaliation claim.[5]
Cathey’s retaliation claim fails because he failed to exhaust his administrative remedies by not filing a timely administrative charge alleging retaliation. A plaintiff is required to exhaust his administrative remedies by filing a charge with the MCAD before pursuing a claim in court. See M.G.L.c. 15IB, §§5-9. MCAD regulations require complainants to include the following in an MCAD charge: “appropriate identification of the complainant(s) and the person(s) alleged to have committed the unlawful discriminatory acts; . . . the date(s) on which such unlawful discriminatory acts occurred; . . . and a concise statement of the alleged discriminatory acts.” 804C.M.R. §1.03(4). Discrimination claims are generally dismissed where the complaint filed in court exceeds the scope of the charges set out in the MCAD charge. See Riebold v. Eastern Casualty Ins. Co., Inc., 6 Mass. L. Rptr. 206, 1997 WL 311523, at 3-4 (Mass.Sup.Ct. June 4, 1997) (court dismissed sex discrimination claim where plaintiff failed to articulate particulars in support of her claim in MCAD charge); Conroy v. Boston Edison Co., 758 F.Supp. 54, 60 (D.Mass. 1991) (court found allegations of new acts of discrimination were inappropriate where complainant failed to allege these acts in MCAD complaint); Cogen v. Milton Bradley Co., 1989 WL 81067, at 5 (D.Mass. Jan 12, 1989) (court dismissed hostile environment claim where administrative charge claimed only disparate treatment).
In this case, Cathey set out only the following discrimination claim in his MCAD charge:
The Complainant is 63 years of age and has been employed by Fallon Clinic, Inc. for approximately 16 years and was entitled to commence receiving full pension benefits upon attaining the age of 65. Fallon Clinic, Inc., however, notwithstanding the *328 above, saw fit to discharge the complainant by letter to the complainant dated October 1, 1995 wherein it stated that his position as Controller/Director of Finance had been eliminated effective October 1, 1995.
See Fallon Clinic, Inc.’s Appendix — Volume I, Exh. 13, MCAD Complaint.
The evidence in the summary judgment record shows that Cathey filed a charge with the MCAD with respect to his age discrimination claim, but he failed to file a charge alleging retaliation and he did not amend his MCAD charge before filing suit in court. Because he did not raise retaliation as a cause of action in his MCAD charge, Cathey failed to exhaust his administrative remedies pursuant to M.G.L.c. 15 IB and cannot now pursue a retaliation claim in this court.
Cathey’s retaliation claim also fails because he has not demonstrated a prima facie case of retaliation. Under M.G.L.c. 15IB, an employer is prohibited from retaliating against an employee because that employee filed a complaint, testified or assisted in an MCAD or court proceeding. G.L.c. 151B, §§4(4), 4(4A). To recover on a retaliatory discharge claim under 15IB, a plaintiff must establish that (1) he engaged in a protected activity by filing a complaint, testifying or assisting in an MCAD or court proceeding; (2) the defendant employer was aware of that protected activity; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) but for the plaintiffs activity, the defendant would not have taken the adverse employment action against him. See MacCormack v. Boston Edison Co., 423 Mass. 652, 662-63, 672 N.E.2d 1 (1996); see also Ruffino v. State Street Bank & Trust Co., 908 F.Supp. 1019, 1044 (D.Mass. 1995) (analyzing state law claim). At a minimum, there must be competent evidence that the alleged retaliator knew of the plaintiffs protected activity and that a retaliatory motive played a part in the adverse employment action alleged. Lewis v. Gilette Co., 22 F.3d 22, 24 (1st Cir. 1994).
Here, it is undisputed that Cathey exercised his rights under M.G.L.c. 151B and that Fallon was aware of his claim. The question, therefore, is whether Fallon’s conduct was an adverse employment decision, and whether it was causally related to the filing of Cathey’s MCAD complaint. In this case, the evidence does not show that Fallon’s withdrawal of the severance offer constituted an adverse employment action. Nor does the evidence show that but for the exercise of his rights under M.G.L.c. 151B, Cathey would not have suffered the loss of those severance benefits. As more fully discussed below, Cathey has failed to meet his burden under the third and fourth prongs of this test.
Cathey has not established, under the third prong of the test, that he was subjected to an adverse employment action decision pursuant to M.G.L.c. 15IB, §4. This Court does not agree with Cathey’s contention that Fallon’s “conditioning the payment of additional benefits on the abstention of the plaintiff from seeking to enforce any right he might enjoy under the provisions of [M.G.L.c. 15 IB, §4], is a clear violation of said section . . .”[6] See Pl’s Complt., ¶9. Cathey has not cited to any authority that supports such a finding, or even referenced this allegation in his opposition. In fact, an employer's conditioning of an offer of severance benefits upon a discharged employee’s release of claims against the employer has been upheld as valid. See, e.g., Smith v. Fallon Clinic, Inc., 8 Mass. L. Rptr. 518, 1998 WL 296900 at 3-6 (Mass.Sup.Ct. June 3, 1998) (court dismissed complaint because plaintiff signed release of all claims as a condition of receiving Fallon’s offer of severance benefits).
Furthermore, Cathey has failed to satisfy the fourth prong of the test, that is, he has not established that but for the exercise of his rights under M.G.L.c. 15 IB, Fallon would not have withdrawn his severance benefits. The evidence in the summary judgment record shows that the withdrawal of the severance offer after Cathey’s filing of charges with the MCAD was not the type of causal connection that establishes retaliation as contemplated by M.G.L.c. 151B. The November 3, 1995 letter provided that Cathey was to sign the agreement provided therein in order to receive the severance benefits offered. Defs Appendix Volume I, Exh. 10. Additionally, the record shows that Cathey recognized that he was not entitled to receive the benefits if he refused to sign the agreement. He testified as to the following at his deposition:
Q: So you understood that if you declined the severance agreement, you wouldn’t receive the benefits of the severance agreement. Is that right?
A: Yes.
See Fallon Clinic, Inc.’s Appendix — Volume III, Cathey Dep. at 454, dated April 25, 2000.
Since Cathey voluntarily refused to sign the agreement, he cannot claim that he was entitled to receive the benefits offered. The offer was expressly conditioned on his signing of the agreement as well as on his release of claims pursuant to signing the agreement, and because Cathey subsequently refused to sign the agreement, his claim that filing an MCAD complaint triggered the withdrawal of the offer fails. Moreover, Fallon’s withdrawal of the severance offer in accordance with the express conditions of the severance agreement shows no evidence of retaliatory conduct on Fallon’s part. Thus, Cathey has not demonstrated that there was an improper causal connection between his filing of an MCAD charge and the loss of the severance benefits, as required under M.G.L.c. 151B.
For the reasons discussed above, summary judgment will ENTER for Fallon as to the retaliation claim, as is provided by Mass.R.Civ.P. Rule 56(e).
*329 ORDER
For the foregoing reasons, summary judgment will ENTER for the defendant as to both claims.

 Although the first agreement was set out in the October 3, 1995 letter, the November 3, 1995 letter is at issue in the instant case.

 Fallon also argues that Cathey’s age discrimination claim must fail because he cannot establish a prima facie case of age discrimination and because he cannot demonstrate that his position was eliminated because of his age, i.e., that Fallon’s legitimate non-discriminatory reasons for eliminating his position were a pretext for age discrimination. Fallon asserts that it had implemented a reduction-in-force in late 1995 due to financial problems and industry pressure to decrease medical costs without sacrificing quality of care. Fallon stated that Cathey’s position was included in the reduction-in-force because (1) Cathey performed administrative tasks that were not directly relevant to the operations of Fallon; (2) Cathey was less efficient than his co-workers in performing duties and responsibilities; (3) these duties were easily absorbed by Cathey’s co-workers; (4> Fallon thus could not justify Cathey’s high salary. See Memorandum of Law in Support of Fallon Clinic, Inc.’s Motion for Summary Judgment, at 2. Because, however, the evidence in the record supports an entry of summary judgment for Fallon on other grounds, this Court need not address those arguments.

 ERISA §502(a) provides the following: “It shall be unlawful for any person to discharge, fine, suspend, expel, discipline,' or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .” 29 U.S.C. §1140. See also Ingersoll-Rand, supra, at 142-43.

 Cathey’s complaint describes these benefits as Fallon’s contributions to the payment of accident and health insurance premiums.

 Fallon points out that under Mass.R.Civ.P. Rule 56(e), “(w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.” Since, however, Cathey’s complaint references evidence submitted in support of his retaliation claim, this Court will analyze the claim on its merits.

 The November 3, 1995 severance agreement letter provides the following:
In exchange for the special severance package offered to you under this Agreement, to which, you agree, you were not otherwise entitled, you hereby release and forever discharge the Company . . . from any and all causes of action, rights, or claims that you have had in the past, now have or might now have, in any way related to, arising out of or connected with your employment and its termination or pursuant to any federal, state or local employment laws, regulations, or other requirements, including but not limited to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act and the Massachusetts fair employment practices statute . . .
Defs Appendix Volume I, Exh. 10.