Lauriat, J.
Plaintiffs, five women, brought this action against the City of Cambridge (“Cambridge”), pursuant to Mass. Gen. Laws ch. 15 IB, §4, alleging unlawful race and national origin discrimination and retaliation in the employment context. Cambridge has now moved for summary judgment on all counts brought by the plaintiffs. For the reasons set forth below, Cambridge’s motion is allowed in part and denied in part.

BACKGROUND

The following undisputed facts, presented in the light most favorable to the nonmoving parties, are revealed by the summary judgment record.
Florencia LaChance
Florencia LaChance (“LaChance”), an African-American woman, was employed by Cambridge as Manager of Employment Services from May 18, 1999 through July 7, 1999. She worked a total of 25 days for Cambridge. It is alleged that from the outset of her employment, LaChance faced discriminatory treatment by her employer. The undisputed facts establish that during her brief tenure, a co-worker received a defaced message which LaChance found to be racially offensive. Then, a few days after being reprimanded for ordering a cardboard mail slot system which was not to the liking of her superior, LaChance tendered her resignation letter. She subsequently filed a charge of race discrimination with the Massachusetts Commission Against Discrimination (“MCAD”).
Marian Hampton
Marian Hampton (“Hampton”) began her tenure as Associate Director for Public Services of the Cambridge Public Libraries in May of 1994, and continued in that position until November of 1998. She is African-American. It is undisputed that Ms. Hampton attended law school in a different state while employed by Cambridge. Approximately in the fall of 1997 Ms. Hampton began receiving criticism in regards to her work performance from her supervisor. In June of *49 1998 Ms. Hampton filed her race discrimination complaint with the MCAD. In November 1998, Cambridge terminated Ms. Hampton’s employment.
Maiy Wong
Cambridge hired Mary Chui Wong (“Wong”) as the Executive Director of the Cambridge Kids’ Council in January of 1994, and she continues to hold that position today. Wong has alleged race and national origin discrimination, including as examples, her exclusion from meetings, demotion, hyper-supervision, and being stripped of significant job responsibilities. In addition, she has alleged that Cambridge has retaliated against her for having opposed practices forbidden by G.L.c. 151B and/or for having participated in practices protected by G.L.c. 15IB, §4.
Malvina Monteiro
Malvina Monteiro (“Monteiro”) was hired by Cambridge as Executive Secretary of the Police Review and Advisory Board (“PRAB”) in July 1990, and she continues in that role to date. Monteiro is a naturalized American citizen of Cape Verdean descent. She has alleged disparate treatment on account of her race and national origin, including as examples in her complaint, disparity in pay and refusal to recommend her candidacy to a city affiliated graduate school scholarship program on account of her race. Monteiro filed her claim for race discrimination with the MCAD in September of 1998. She also claims retaliation under G.L.c. 15 IB, §4.
Linda Stamper
Linda Stamper (“Stamper”) began work as an attorney in the Cambridge Law Department in January of 1992, and continued her employment there until October of 1999. Stamper has alleged that various acts and omissions constitute disparate treatment with respect to benefits and conditions arising out of her initial hiring and continuing throughout her tenure. It is undisputed that after filing her race discrimination claim with the MCAD, Cambridge intimated that she might be in violation of her ethical duties as an attorney in that she was a party to a legal proceeding against Cambridge while at the same time she was representing Cambridge. Thereafter, Stamper left Cambridge’s employ.
DISCUSSION
Summary judgment will be granted when there are no genuine issues of material fact and when the summary judgment record entitles the moving party to a judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. See Pederson v. Time, Inc., 404 Mass. at 17. Summary judgment is a “device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Community National Bank, 369 Mass. at 553.
I. Procedural Requirements of G.L.c. 15 IB
Chapter 15 IB has a six-month statute of limitation. G.L.c. 151B, §5. Section 5 reads in relevant part: “[a]ny complaint filed [with the MCAD] pursuant to this section must be so filed within six months after the alleged act of discrimination.” “In the absence of a timely filed complaint to the MCAD, there may be no resort to the courts.” Serini v. Star Sportswear Manufacturing Corp., 24 Mass.App.Ct. 428, 430, review denied, 400 Mass. 1107 (1987). Failure to file a timely complaint with the MCAD prior to filing an action in the Superior Court operates as a bar to a claim of discrimination under to G.L.c. 151B. See Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994).
However, a genuine issue as to when a plaintiff knew or should have known of discriminatory treatment precludes a grant of summary judgment. See Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 399 (1994) (statutory period does not begin to run until employee has sufficient notice of that specific act); Hendrickson v. Sears, 365 Mass. 83, 89 (1974) (“a cause of action accrues on the happening of an event likely to put the plaintiff on notice”).
II. Employment Discrimination
A. Shifting Burdens of Proof
In employment discrimination cases, Massachusetts has, until recently, followed the three-stage analysis of McDonnell Douglas Corp., v. Green, 411 U.S. 792 (1973). See Blare v. Husky Injection Molding System Boston, Inc., 419 Mass. 437, 444-45 (1995); Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 134-36 (1976). Of late, the Supreme Judicial Court (“SJC”) has recognized the difficulties involved in using the McDonnell Douglas analysis in jury instructions, and recommended that trial judges formulate instructions to “focus the jury’s attention on the ultimate issues of harm, discriminatory animus and causation.” Lipchitz v. Raytheon, 434 Mass. 493, 508 (2001). In the context of summary *50 judgment, however, the McDonnell Douglas framework remains appropriate to “give judges a method of organizing evidence and assigning the burdens of production and persuasion in a discrimination case.” Id., quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979).
In the summary judgment context, the McDonnell Douglas burdens shift, so that in order to succeed, the defendants must show either (1) that the plaintiff is unable to establish a prima fade case; or (2) that the plaintiff is unable to present evidence of discrimination such that his or her claims would be successful at trial. See Kourvovacilis, 410 Mass. at 714 (1991).
Admittedly, summary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997), citing Blare, 419 Mass. at 439. “Nonetheless, summary judgment is not always inappropriate in these cases. We have upheld summary judgment in favor of defendants where their motions demonstrate that the plaintiff is unable to offer admissible evidence of the defendant’s discriminatory intent, motive, or state of mind sufficient to carry the plaintiffs burdens and support a judgment in the plaintiffs favor.” Matthews, 426 Mass. at 127, citing Blare, 419 Mass. at 439, and cases cited therein.
B. Constructive Discharge
In order for a plaintiff to maintain an action for constructive discharge, the “trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee’s shoes would have felt compelled to resign.” GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995) (summary judgment appropriate where objective assessment of working conditions found not to be so difficult as to be intolerable), quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977). This is an objective test, based on an assessment of the conditions under which the employee has asserted he was expected to work; it is met if it could be found that the conditions were so difficult as to be intolerable. See GTE Products Corp., 421 Mass. at 34 (internal citations omitted). Although an employee may say “I quit” or “I resign,” constructive discharge in a legal sense is considered a firing because the employment relationship is actually severed involuntarily by the employer’s acts, against the employee’s will. See id.
III. Hostile Work Environment
The concept of a “hostile work environment” claim was developed in the context of sexual harassment case law, and is dependent upon a finding that the environment is “pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and poses] a formidable barrier to full participation of an individual in the workplace.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 532 (2001) (internal citations omitted). An employee may make out a hostile work environment claim if he alleges “offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive.” Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000), citing Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996).
The defendant questions whether hostile work environment claims can be brought in the context of race. The court is persuaded that the courts of the Commonwealth allow such claims. See Clifton v. Mass. Bay Transit Authority, 11 Mass. L. Rptr. 316, 2000 WL 218397 (Mass.Super.Ct. 2000). Although the court is not bound by federal interpretations, see Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000), citing Blare, 419 Mass. at 441, it has nevertheless found it helpful, especially in the discrimination context, to look to federal interpretations for guidance.
Federal courts have allowed claims of hostile environment to be brought in the context of race. See Landrau-Romero, 212 F.3d at 613; Danco, Inc. v Wal-Mart Stores, Inc., 178 F.3d 8, 13 (1st Cir. 1999); Lattimore, 99 F.3d at 463; Cogen v. Milton Bradley Co./Hasbro Inc., 1989 WL 81067 (D.Mass. 1989). Also, in construing Massachusetts procedural rules, a court will look to judicial interpretations of parallel federal rules for guidance absent pertinent state precedent. See Rollins Environmental Services, Inc. v. Superior Court, 368 Mass. 174, 179-80 (Mass. 1975); Shuman v. Stanley Works, 30 Mass.App.Ct. 951, 952-53 (Mass.App.Ct. 1991).
The court concludes that such claims are allowed in the Commonwealth. See Clifton v. Mass. Bay Transit Authority, 11 Mass. L. Rptr. 316, 2000 WL 218397 (Mass.Super.Ct. 2000). The veiy concepts that underpin a hostile work environment stem from material changes in the conditions of one’s employment. General Laws c. 15 IB explicitly states in relevant part: “It shall be an unlawful practice: 1. For an employer . . . because of race, color, religious creed, national origin, sex ... to discriminate against such individual in . . . terms, conditions or privileges of employment ...” G.L.c. 15 IB §4. It does not seem appropriate to allow a claim for hostile work environment to one protected class and to deny it to another.
However, in order to succeed on a hostile work environment claim, one must still comply with the procedural requirements of G.L.c. 15 IB, and exhaust her administrative remedies by filing a timely charge alleging a hostile work environment. G.L.c. 15 IB, §§5-9. MCAD regulations require the complainant to include “appropriate identification of the complainant(s) and the person(s) alleged to have committed the unlawful discriminatoiy acts;... the date(s) on which such unlawful discriminatory acts occurred; . . . and *51 a concise statement of the alleged discriminatory acts.” 804 C.M.R. §1.03(4). The dual purpose of the filing requirement is to provide the MCAD with an opportunity to investigate and conciliate a discrimination claim and to provide notice to an accused of a potential lawsuit. See Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 217 (1997).
The United States District Court has adopted the “scope of investigation” rule in determining whether a claim must be specifically alleged in the MCAD complaint. See Conroy v. Boston Edison Co., 758 F.Sup. 54, 58 (1991). That rule “revolves around the principle that the scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the MCAD investigation could reasonably be expected to uncover.” Id. (internal citations omitted).
However, the same federal court has ruled that the scope of investigation rule does not apply to a hostile environment claim; it must be brought as a separate cause of action. See Cogen, 1989 WL 81067 at 4. (because not all conduct that may be characterized as harassment rises to the level of a hostile work environment claim, the hostile work environment claim must be a separate cause of action with a distinct burden of proof). See also Cathey v. Fallon Clinic, Inc., 13 Mass. L. Rptr. 325, 2001 WL 801638, 4 (Mass.Super. 2001) (citing Cogen as an example of appropriate dismissal of a hostile work environment claim where administrative charge claimed only disparate treatment).
IV. Retaliation
The retaliation provision of G.L.c. 15 IB protects one who has opposed any practices forbidden by the statute, and one who has filed a complaint, testified, or assisted in any proceedings before the MCAD. See College-Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 168-69 (1987). The determination of retaliation is largely a factual matter, see Bain v. Springfield, 424 Mass. 758, 764 (1997), and a complainant has the burden of proving that an employer’s adverse decision was based on retaliation. See Melnychenko v. 84 Lumber Co., 424 Mass. 285, 293 (1997). “At a minimum, there must be competent evidence that the alleged retaliators knew of the plaintiffs protected activity and that a retaliatory motive played a part in the adverse employment actions alleged.” Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994).
Stated another way, a plaintiff must prove that his employer “took any action against him at all which was substantial enough to count as the kind of material disadvantage that is a predicate for a finding of unlawful retaliation.” MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996), citing Lewis, supra, 22 F.3d at 24. Moreover, the claimant must demonstrate a causal connection between his activity and the alleged retaliatory action. See McCormack, 423 Mass. at 662. The mere fact that one event followed another is not sufficient to make out a causal link. See Prader v. Leading Edge Products, Inc., 39 Mass.App.Ct. 616, 617 (1996).
The evidence submitted must be an objective representation of the standard of law provided above, and must demonstrate that the claimant was disadvantaged with respect to objective terms and conditions of employment, as opposed to mere subjective feelings of disappointment and disillusionment. See McCormack, 423 Mass. at 663-64 (testimony of other employees regarding their view of the plaintiffs position at the company, absent direct proof, was insufficient to make a retaliation claim).
In response to evidence presented by a plaintiff which would warrant a conclusion that an action was retaliatory, the employer may present a nondiscriminatory reason for taking the allegedly retaliatory measure which would render retaliation a non-determinative factor in the employer’s action. See id.
Florencia LaChance
Count one of the complaint alleges various acts of race discrimination. On the record before the court, there is insufficient evidence to support LaChance’s claims. First, the claim of constructive discharge fails because the facts alleged do not rise to the objective level set forth in GTE Products Corp. See 421 Mass. at 34. The conditions in which LaChance asserts she was expected to work were not “so difficult as to be intolerable.” Id. at 34.
Second, the facts surrounding Cambridge’s handling of the defaced message received by Mr. Wigfall is wholly immaterial to a claim of discrimination asserted by LaChance. LaChance does not have standing to complain about alleged discrimination suffered by a co-worker.
Also, while the facts must be viewed “in the light most favorable to ... [the nonmoving party], taking all the facts set forth in its supporting affidavits as true,” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991) (citing Graham v. Quincy Food Serv. Employees Ass’n & Hosp., Library & Pub. Employees Union, 407 Mass. 601, 603 (1990)), “bare assertions and conclusions [regarding a pariy’s intent] ... are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Environmental Services, Inc., 416 Mass. 684, 696 (1993).
Thus, on the admissible record before the court, LaChance has not met her prima facie burden: she does not demonstrate sufficient evidence that she was subjected to an adverse employment action under circumstances giving rise to an inference of discrimination, nor would they be enough to convince a fair-minded jury of the existence of the required element of discriminatory intent. See Matthews, 426 Mass. at 127; Kourouvacilis, 410 Mass. at 713-16.
Also, any potential hostile work environment claim based on the same facts is time barred by the applica *52 ble statute of limitations because LaChance failed to include it both in her original complaint filed with the MCAD, and in her complaint before this court. See Cogen, 1989 WL 81067 at 4 (the hostile environment claim is a separate cause of action with a distinct burden of proof). See also Cathey v. Fallon Clinic, Inc., 13 Mass. L. Rptr. 325, 2001 WL 801638, 4 (Mass.Super. 2001). But even absent the statute of limitations problem, the facts alleged are not sufficiently severe or pervasive to constitute an objectively hostile work environment.
LaChance’s retaliation claim must fail because she has not produced sufficient evidence that would point to any objective changes in the terms and conditions of her employment. Moreover, the chronology of events suggests that the retaliation claim is not supported by the facts: LaChance did not file her discrimination charge until after she left Cambridge’s employ.
Marian Hampton
On the record presented, the court concludes that Hampton has failed to meet her burden of establishing a prima fade case of race discrimination under G.L.c. 15 IB. Specifically, Hampton has failed to demonstrate that she was doing her job acceptably when she suffered the adverse employment actions. Therefore, summary judgment must be entered for Cambridge on this discrimination claim.
Hampton’s retaliation claim also fails. While termination may be sufficient for a finding of retaliation, in this case, the plaintiff has asserted no admissible evidence beyond her own conclusory deposition testimony that would objectively establish a causal link between her protected activity and her employer’s reason for terminating her. She does not even attempt to address the defendant’s assertion that the reason for her termination was due to her own alleged malfeasance. Just because her termination chronologically followed her filing of the complaint does not save her claim. See Prader, 39 Mass.App.Ct. at 617.
Mary Wong
Based on the record presented, the court finds that there is sufficient factual evidence alleged by Ms. Wong to withstand summary judgment on all counts.
Malvina Monteiro
Based on the record presented, the court finds that there is sufficient factual evidence alleged by Ms. Monteiro to withstand summary judgment on all counts.
Linda Stamper
Cambridge contends that certain allegations made by Stamper are time barred. Specifically, Cambridge asserts that her allegations regarding failure to promote, as well as those concerning her initial hiring, relate to acts that were separate and distinct from all others, and are thus barred by the statute of limitations.
The court concludes that the portion of the complaint which alleges discriminatory failure to promote is barred by the statute of limitations, since the alleged violations complained of occurred seventeen months prior to the filing of Stamper’s MCAD complaint.
However, from the facts submitted in the record, the court is not persuaded that there are sufficient undisputed facts to award Cambridge summary judgment as to the claims regarding the alleged denial of carryover of vacation and sick-time benefits at the outset of her hiring. There is insufficient evidence alleged by Cambridge with regards to the temporal juncture at which she knew or should have known that the denial of her carry-over benefits was indeed discriminatory.
As to Stamper’s claim for constructive discharge, the court is not persuaded that the admissible facts alleged by Stamper meet the objective standard set out in GTE Products Corp. Being presented with a potential ethical violation for maintaining a suit against her employer does not objectively amount to “new working conditions” that “would have been so difficult or unpleasant that a reasonable person in the employee’s shoes would have felt compelled to resign.” GTE Products Corp., 421 Mass. at 34.
As to all other claims in Count Eleven arising out of acts and omissions alleged prior to the six-month period before the filing of her MCAD complaint, summary judgment is also proper. The remaining portions of Count Eleven that arise from alleged facts within the six-month time period before the filing of the administrative complaint survive.
As to the retaliation claim, the court concludes that Stamper has not provided sufficient admissible evidence that factually meets the objective test for retaliation to withstand the entry of summary judgment.

ORDER

For the forgoing reasons, the motion of the defendant City of Cambridge for summary judgment is ALLOWED as to Counts One and Two brought by Ms. LaChance; ALLOWED as to Counts Three and Four brought by Ms. Hampton; DENIED as to Counts Five, Six and Seven brought by Ms. Wong; DENIED as to Counts Eight, Nine and Ten brought by Ms. Monteiro; ALLOWED as to those claims brought by Ms. Stamper in Count Eleven for constructive discharge and failure to promote, as well as claims based on facts that occurred before six months prior to Ms. Stamper’s filing of her charge, except for the specific claim arising out of the denial of carry-over benefits; but DENIED as to those claims in Count Eleven arising out of the carry-over benefits from the initial hiring and facts within the six-month limitation period; and ALLOWED as to Count Twelve.