EDWARD R. MACCORMACK & another[1] *vs.* BOSTON EDISON COMPANY.

Norfolk. September 5, 1996. - October 28, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Practice, Civil,* Jury trial, Retroactivity of judicial holding, Judgment notwithstanding verdict, Disqualification of judge. *Constitutional Law,* Trial by jury, Retroactivity of judicial holding. *Jury and Jurors. Anti-Discrimination Law,* Age, Employment. *Employment,* Discrimination, Retaliation. *Evidence,* Relevancy and materiality.

In an age discrimination case in which the plaintiff alleged that the employer had unlawfully retaliated against the plaintiff because of his age discrimination action, the trial judge incorrectly ruled that the plaintiff was not entitled to a trial by jury on that claim [656-658], however, the judge correctly concluded that the defendant was entitled to a judgment notwithstanding the verdict on that claim where the plaintiff did not present evidence that the employer took adverse action against him that was sufficient as a matter of law to make out a prima facie case of retaliation. [658-659, 662-664]

At a trial of a civil action, the judge properly excluded as evidence a certain newspaper article where he ruled that, even if the article were not inadmissible, its prejudicial value outweighed any probative value it might have. [664-665]

At a civil trial, the judge's remarks to counsel after the conclusion of the trial with respect to his opinion of one of the defendant's witnesses did not warrant the conclusion that the judge was unable to exercise impartial judgment in the case. [665-666]

CIVIL ACTION commenced in the Superior Court Department on September 13, 1991.

The case was tried before *Thomas E. Connolly,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nancy S. Shilepsky* (*Katherine J. Michon* with her) for the plaintiffs.

*James M. Paulson* (*Robert P. Morris* with him) for the defendant.

[1]Janet MacCormack.

FRIED, J. The plaintiffs, Edward R. and Janet MacCormack, sought damages under G. L. c. 151B, § 4 (1994 ed.), from his employer for discriminating against him because of his age and for retaliating against him for seeking such relief. A jury found for the defendant on the age discrimination claim and for the plaintiffs on his claim of retaliation. A Superior Court judge, treating the portion of the verdict relating to retaliation as merely advisory, ruled that the plaintiffs were not entitled to a jury trial, found for the defendant on the retaliation claim, and, in the alternative, assuming there was a right to a jury trial, granted judgment for the defendant notwithstanding the jury's verdict on the ground that the evidence of unlawful retaliation was insufficient as a matter of law. The plaintiffs appealed. We transferred their appeal to this court on our own motion. The parties are entitled to a jury trial for retaliation claims and that ruling applies retroactively. The Superior Court judge was correct, however, that the evidence of unlawful retaliation was insufficient as a matter of law.

## I

Edward R. MacCormack began working for the Boston Edison Company in May, 1976. In 1986, MacCormack became Boston Edison's "Corporate Nuclear Security Specialist." This responsibility required him to report directly to John F. Kehoe, Jr., who then served as Boston Edison's corporate security officer. In October, 1990, MacCormack applied for the position of corporate security officer in anticipation of Kehoe's upcoming retirement. MacCormack was interviewed for the opening, but John Connolly, a former Federal Bureau of Investigation (FBI) supervisor agent, was chosen for the position instead. When MacCormack asked why he had not been selected, he was told that Connolly had stronger relationships with law enforcement personnel throughout New England and that Connolly had more experience and training in the area of terrorism prevention. At the time Connolly's appointment was announced in December of 1990 MacCormack was sixty years of age and Connolly was fifty years of age.

Approximately four months later, in April, 1991, MacCormack notified Boston Edison that he would be filing a claim of age discrimination as a result of this hiring decision.

MacCormack's first charge was filed on or about May, 1991. On September 13, 1991, MacCormack and his wife filed a claim in the Superior Court alleging that Boston Edison had practiced discrimination toward him on the basis of age and demanding a jury trial.[2] In February, 1993, the MacCormacks filed a motion to amend their complaint to claim that Boston Edison had retaliated against MacCormack because of his age discrimination suit. Boston Edison's motion to strike MacCormack's jury demand on the unlawful retaliation claim was denied. It was later agreed that all claims would be tried to the jury, but the judge would reserve judgment as to whether the verdict on the unlawful retaliation claim would be binding or advisory.

On January 18, 1994, the jury returned a verdict for Boston Edison on the age discrimination claims, but found for the plaintiffs on the unlawful retaliation claim, awarding the plaintiffs $50,000 in damages for emotional distress and $150,000 in punitive damages. Boston Edison moved to treat the jury verdict on the unlawful retaliation claim as advisory, and the judge agreed. The judge held that there is no right to a jury trial for retaliation claims. Concluding that no unlawful retaliation had taken place, the judge entered judgment for Boston Edison on that claim.

The plaintiffs filed a timely notice of appeal on June 23, 1994. On July 11, 1994, this court issued its opinion in *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220 (1994), which held that a plaintiff asserting a gender discrimination claim under G. L. c. 151B, § 4, has a right to trial by jury under art. 15 of the Declaration of Rights of the Massachusetts Constitution. On July 14, the plaintiffs moved for reconsideration and relief from judgment on the basis that *Dalis* mandated a jury trial on their unlawful retaliation claim. Boston Edison opposed the motion and, in the alternative, moved for a judgment notwithstanding the verdict. The judge refused to apply *Dalis* retroactively, but amended his previous judgment to rule, in the alternative, that Boston Edison was entitled to a judgment notwithstanding the jury's verdict.

---

[2]MacCormack's original claim also included allegations charging that he had been discriminated against on the basis of national origin, MacCormack being of Scottish heritage while Connolly, Kehoe, and other Boston Edison personnel were of Irish descent. The parties filed a stipulation of dismissal as to this claim.

## II

MacCormack's claim of age discrimination was brought under G. L. c. 151B, § 4. In addition to prohibiting specific forms of discrimination, this statute also forbids retaliation stemming from such discrimination claims: an entity may not "discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five." G. L. c. 151B, § 4 (4).

### A

*Right to a jury trial.* In *Dalis* we held that art. 15[3] applies to gender discrimination claims, as these fall within the language of that article guaranteeing trial by jury in, "controversies concerning property . . . between two or more persons." *Dalis* v. *Buyer Advertising, Inc., supra* at 222-223. While the article excepts cases which, prior to its adoption, were addressed to the court's equity jurisdiction, insofar as Dalis's claim of gender discrimination sought damages it was analogous to common law causes of action under tort and contract.[4] *Id.* at 222-224, citing *Gallagher* v. *Wilton Enters., Inc.,* 962 F.2d 120, 122-123 (1st Cir. 1992). We now take the inevitable next step and hold that the right to a jury trial extends to all damage claims under G. L. c. 151B, § 4, including claims for unlawful retaliation.[5] General Laws c. 151B,

---

[3]Article 15 provides: "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it."

[4]Dalis's complaint sought compensatory damages, exemplary damages, interests and costs, and attorney's fees. *Dalis* v. *Buyer Advertising, Inc.,* 418 Mass. 220, 223 n.3 (1994). Unlike MacCormack, Dalis also requested reinstatement, a form of relief that is equitable in nature. When a party seeks both equitable and legal relief, the trial court must exercise its discretion to determine the order in which claims are heard but must exercise its responsibility in a way that will preserve the right to a jury trial. *Dalis, supra* at 227, citing *Beacon Theatres, Inc.* v. *Westover,* 359 U.S. 500, 510 (1959).

[5]Boston Edison argues that a retaliation claim is analogous to an action for breach of fiduciary duty, an action which is equitable in nature, observ-

§ 4 (4), retaliation claims arise directly out of a claimant's original discrimination claim. It would be anomalous to grant a right to a jury trial for claims of unlawful gender, racial, or other such categorical discrimination, but to deny it in cases where it is said that bringing the charge itself led to prohibited discrimination.[6]

## B

*Retroactive application of* Dalis. Boston Edison argues that, if the *Dalis* case is held to apply to retaliation claims, its holding should not be applied retroactively to cover this case. The holding in *Dalis* itself was retroactive, in the sense that it entitled the plaintiff in that case to a jury trial. This does not end the inquiry, however, as decisions which apply retroactively to the case at hand have not always been applied retroactively to all parties in other cases similarly situated. See, e.g., *Bouchard* v. *DeGagne*, 386 Mass. 45, 48-49 (1975); *McIntyre* v. *Associates Fin. Servs. Co. of Mass.*, 367 Mass. 708, 710-712 (1975).

Both parties invoke the factors enumerated in *McIntyre* v. *Associates Fin. Servs. Co. of Mass., supra*, to decide this issue. The Appeals Court also used these factors in *Dean* v. *Springfield*, 38 Mass. App. Ct. 910 (1995), to give *Dalis* retroactive application. Although the *McIntyre* test plainly requires retroactivity here,[7] we believe the issue of retroactivity may be resolved more simply. The *McIntyre* test was based on the

ing that "[f]iduciaries have a duty to refrain from certain actions because of their relations with certain persons." We reject this ingenious but strained argument which would suggest that once an employer is accused of unlawful discrimination he assumes a special relation to the accusing employee such that the employer is imbued with a duty "not to take any adverse action against the employee because of that accusation." This argument proves too much as it might as well convert all G. L. c. 151B discrimination claims into breaches of fiduciary duty. A "special relation" could as well be said to exist prior to retaliation since the employer is also under a duty "not to take any adverse action against the employee because of that [employee's race, gender, age]."

[6]Indeed, although the judge disputed the retroactive applicability of *Dalis* to the MacCormacks's case, he recognized *Dalis*'s relevance to retaliation claims when he remarked that "the parties assume correctly that *Dalis* effectively recognizes that there is a state constitutional right to a trial by jury of an unlawful retaliation claim under G.L. c. 151B."

[7]The decision was clearly foreshadowed, retroactive application would further the purpose of the rule, and most importantly, it would work no

Supreme Court's discussion in *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106-107 (1971). Subsequent to *Chevron Oil,* the Supreme Court has held that, when a rule of Federal law is applied retroactively in the case in which it is announced, it should apply retroactively to all parties similarly situated to eradicate "selective temporal barriers to the application of federal law" in civil cases. *Harper* v. *Virginia Dep't of Taxation,* 509 U.S. 86, 97 (1993). See also *Reynoldsville Casket Co.* v. *Hyde,* 514 U.S. 749, 751-752 (1995). While we have cited *McIntyre* with approval in a number of cases addressing retroactivity, see *Tamerlane Corp.* v. *Warwick Ins. Co.,* 412 Mass. 486, 490 (1992); *Payton* v. *Abbott Labs,* 386 Mass. 540, 565 n.12 (1982); *Schrottman* v. *Barnicle,* 386 Mass. 627, 631-632 (1982); *Crowell* v. *McCaffrey,* 377 Mass. 443, 452 (1979); *Bouchard* v. *DeGagne, supra* at 49, none of these cases concluded that we should limit the reach of a prior decision which had initial retroactivity when announced. Traditionally, exceptions to the general rule of retroactivity have arisen when judicial rulings have altered rights in Massachusetts contract and property law where issues of reliance might impose hardship on unsuspecting parties. *Payton* v. *Abbott Labs, supra* at 565. When the decision involves a matter of constitutional right, as it does here, considerations of constitutional principle with rare exceptions require retroactive application. A constitutional decision is not a legislative act but a determination of rights enacted by the Constitution, so that all persons with live claims are entitled to have those claims judged according to what we conclude the Constitution demands. This was the analysis put forward by Justice Harlan in *Desist* v. *United States,* 394 U.S. 244, 258-259 (1969) (Harlan, J., dissenting), to which the Supreme Court

hardship or inequity. It is unlikely, to say the least, that a defendant accused of engaging in retaliatory conduct would have formed some reliance that his conduct would be assessed by a judge rather than a jury. In applying the hardship factor, the trial judge decided against retroactivity, suggesting that such application would render prior court judgments in G. L. c. 151B cases invalid, thus imposing "substantial hardship" by upsetting the finality of judgments. Such concern seems exaggerated as only plaintiffs with G. L. c. 151B cases still open on appeal could take advantage of this grant of retroactivity. *Harper* v. *Virginia Dep't of Taxation,* 509 U.S. 86, 97 (1993). *Commonwealth* v. *Figueroa,* 413 Mass. 193, 202-203 (1992), *S.C.,* 422 Mass. 72 (1996). *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 627 (1974).

returned in *Harper*. It is an analysis which has equal force in adjudicating claims under our State Constitution.

Different considerations are at work where the judicial process has run its course, a final judgment reached, and a defendant — almost invariably in a criminal case — seeks to obtain the benefit of a new rule thereafter on a motion for a new trial, see *Reynoldsville Casket Co.* v. *Hyde, supra* at 757-759, and *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202-203 (1992), *S.C.*, 422 Mass. 72 (1996), or when a defendant in a constitutional tort case claims that his conduct did not violate any constitutional norms at the time he acted. *Reynoldsville Casket Co.* v. *Hyde, supra* at 757-759. *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818-819 (1982). *Pasqualone* v. *Gately*, 422 Mass. 398, 402 (1996). See generally Fallon & Meltzer, New Law, Non-Retroactivity, and Constitutional Remedies, 104 Harv. L. Rev. 1731 (1991). But those are not this case.

## III

### A

The judge held that "the verdict [on retaliation] was unsupported by sufficient evidence," and therefore Boston Edison was entitled to judgment notwithstanding the verdict pursuant to Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974).[8]

---

[8]The plaintiffs argue that the judgment notwithstanding the verdict is not properly before the court and, thus, should not be addressed at this time. They assert that the judge never entered a judgment n.o.v. from which MacCormack could appeal, and that the judge indicated that *if* he found *Dalis* applicable to the case at hand, he would then hear the parties' positions on granting judgment notwithstanding the verdict. Because the judge held *Dalis* was not applicable, this subsequent hearing never occurred.

We reject the plaintiffs' position that we cannot rule on the issue of judgment notwithstanding the verdict. See *Delaney* v. *Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 400-403 (1989). First, although the plaintiffs are correct when they observe that the judge's formal order only denied the plaintiffs' motion for reconsideration and motion for relief from judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), his memorandum of decision, entitled "Memorandum of Decision on Plaintiffs' Motions for Reconsideration and Relief from Judgment and Defendant's Request for Judgment Notwithstanding the Verdict," clearly addresses both the rule 60 (b) motion and the motion for judgment notwithstanding the verdict which the defendant had properly raised earlier. The judge issued his decision in the alternative and thus the judge's assessment that "the verdict was unsup-

When we review the entry of a judgment notwithstanding the verdict, we must view the facts contained in the record in the light most favorable to the plaintiffs. See *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. 126, 127 (1996); *Stapleton* v. *Macchi*, 401 Mass. 725, 728 (1988). We do not defer to the judge's view of the evidence but examine the case anew, following the same standard the judge is obliged to apply. *Anthony H.* v. *John G.*, 415 Mass. 196, 199 (1993). *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 786 (1982). A jury's verdict must be sustained if a plaintiff has presented any evidence from which the jury could have made their findings, *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 841 (1987), cert. denied, 484 U.S. 1066 (1988); *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 571-572 (1986), and we assume all the evidence offered by the plaintiffs in support of their case to be true and do not assess witness credibility or the weight of the evidence, but seek to determine whether there is truly "but one conclusion as to the verdict that reasonable men could have reached." *Corsetti* v. *Stone Co.*, 396 Mass. 1, 21 (1985). *Margeson* v. *Town Taxi, Inc.*, 266 Mass. 192, 194 (1929).

At the time MacCormack applied for the opening of corporate security officer, he reported directly to Kehoe who then held that position. MacCormack testified that the only other employees with direct reporting links to the corporate security officer were the officer's secretary and William Kilroy, who served as the division manager over the claims investigative unit. On November 30, 1990, MacCormack was

---

ported by sufficient evidence" was not mere "dictum" as the plaintiffs contend. Second, nowhere in Mass R. Civ. P. 50 (b), 365 Mass. 814 (1974), is there a requirement that the judge hold a hearing before deciding to grant a judgment notwithstanding the verdict once the trial has already taken place. Third, in oral argument to this court, the plaintiffs conceded that we could take the judge's invitation to examine evidence pertaining to the judgment notwithstanding the verdict and uphold his ruling on this ground.

While perhaps the judge should have included his judgment n.o.v. ruling within the paragraph entitled "Order," it would be pointless for us to deny review on this ground alone. The judge has already indicated that he will grant a judgment notwithstanding the verdict, and if reversed on that ground, a new trial under Mass. R. Civ. P. 59, 365 Mass. 827 (1974).

notified that he would not receive the position he sought and that Connolly would be the new corporate security director.[9]

MacCormack testified that before Kehoe's retirement, his department was in the midst of planning a reorganization, which Connolly acted on following his appointment. Under Kehoe's direction, MacCormack had helped develop plans for this reorganization. MacCormack testified that after he filed his first charge of discrimination in May, he was left "out in the cold" and was excluded from further participation in the reorganization process.

On September 13, 1991, the MacCormacks filed their complaint in the Superior Court. In a proposed job description for division manager, dated November 5, 1991, three of the six "major responsibilities" included in the proposal were duties that had traditionally been contained within MacCormack's job description.

On June 23, 1992, MacCormack's attorney deposed Connolly. The following day, MacCormack received a telephone call regarding a sexual harassment matter at the Pilgrim station. A few hours after initiating an investigation, MacCormack called Connolly's secretary at which time he was informed that Connolly had already assigned the case to an investigator named Peter Dolan. Later that day, Connolly also assigned MacCormack to the case. MacCormack found this assignment to "assist" Dolan odd because MacCormack was responsible for claims at Pilgrim, he had never been asked to assist Dolan in the past, and Dolan was not normally assigned to cases at this facility because Dolan did not have free access to the Pilgrim facility. Connolly noted that prior to this case, he could not recall any criminal investigations at Pilgrim which he had assigned to individuals other than MacCormack and Dolan could not recall a previous investigation at Pilgrim in which he had participated.

In August, 1992, MacCormack filed his second charge of discrimination and retaliation. In October, the investigators within the corporate security department received a job level upgrade from a grade 42A to a grade 43A which was identical to MacCormack's job grade, despite MacCormack's observation that the investigators' responsibilities had only

[9]At this time the title of the position was changed from "corporate security officer" to "corporate security director."

changed "on paper," the fact that a major portion of these responsibilities had not been implemented, and Connolly's concession that MacCormack held more responsibilities than the investigators. In response, MacCormack requested that his own position be assigned a still higher grade. This was not done.

In early January, 1993, the parties to this case received a notice of a pretrial conference. On January 18, 1993, Mac-Cormack attended a meeting at the Somerville service center investigative offices where Connolly introduced Frank Herzog, as the new division manager and announced that Mac-Cormack and two investigators would be reporting to Herzog. MacCormack and these two investigators were also told that they would be responsible for investigating pole knockdowns and motor vehicle accidents. Under Connolly's reorganized structure, MacCormack's reporting duties changed in regard to all his responsibilities apart from a nuclear security audit: he would now report to Herzog regarding the bulk of his work. Connolly also stated that Herzog would be responsible for managing security system upgrades at non-nuclear stations and their associated capital and expense budgets, responsibilities formerly held by MacCormack. MacCormack took these announcements to be a public demotion in front of his peers.

During the presentation of the plaintiffs' case, other evidence was presented in support of MacCormack's claim of unlawful retaliation. Linda Baranowski, secretary to the corporate security director testified that in her view, under Kehoe's administration, MacCormack had been "next in line" to the director. John Puma, Boston Edison's Equal Employment Opportunity (EEO) officer testified that in 1988 he had filed a charge of age discrimination against the company following which he was summarily dismissed. The plaintiffs also presented a May, 1993, Boston Edison organizational chart which showed MacCormack reporting to Herzog who then reported to the corporate security director, in contrast to Boston Edison's 1989 organizational chart which showed MacCormack reporting directly to the then corporate security officer. It was agreed that MacCormack's job grade and pay level remained the same throughout all the recounted events.

B

The fatal defect in MacCormack's claim is that he failed to prove that Boston Edison took any action against him at all which was substantial enough to count as the kind of material disadvantage that is a predicate for a finding of unlawful retaliation. See *Lewis* v. *Gillette, Co.*, 22 F.3d 22, 24 (1st Cir. 1994) ("To succeed . . . plaintiff must establish the basic fact that he was subjected to an adverse employment action"). The judge correctly apprehended this point when he charged the jury that:

> "Mr. MacCormack must have been the victim of change in working conditions which materially disadvantaged him. If you find that Mr. MacCormack has not suffered an adverse employment action since initiating his legal proceeding over the promotion decision, then he cannot recover for alleged retaliation."[10]

After they had begun their deliberations, the jury had some questions regarding the standard of law to apply to the retaliation claim. The judge reaffirmed the necessity of finding MacCormack had suffered a change in working conditions that materially disadvantaged him and went on to explain that there must also be a causal relationship so that "but for the filing and pursuing of his original discrimination claim the adverse reaction would not have been taken by the defendant, Boston Edison Company."[11] See *Tate* v. *Department of Mental Health*, 419 Mass. 356, 364 (1995) (must be "determinative factor"); *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 770 (1986); *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Comm'n*, 386 Mass. 414, 418 (1982), quoting *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 563 (1981); *Prader* v. *Leading Edge Prods., Inc.*, 39 Mass. App. Ct. 616,

---

[10]This part of the jury instruction was read to the jury on three separate occasions.

[11]Even if MacCormack were able to convince us that he sustained a material harm at the hands of Boston Edison, MacCormack simply could not sustain this burden of causation. His most damning evidence of retaliation is his chronology of events which suggests that changes within his working environment were responses to actions he took in litigating his G. L. c. 151B discrimination claim. The mere fact that one event followed another is not sufficient to make out a causal link. See *Prader* v. *Leading Edge Prods., Inc.*, 39 Mass. App. Ct. 616, 617 (1996).

617 (1996) (under Federal law, retaliation shown if employee's assertion of rights was "immediate cause or motivating factor" of discharge).

It was the judge's conclusion, as it is ours, that Boston Edison was entitled to a judgment notwithstanding the verdict because MacCormack was unable to show that he had sustained an adverse employment action. In presenting a case of retaliation, a plaintiff must "produce evidence that, if believed, would be sufficient to establish facts that would entitle him to judgment." *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 796 (1995). There is no dispute that Mac-Cormack's behavior was protected when he filed his discrimination claim under G. L. c. 151B, § 4. *Prader* v. *Leading Edge Prods., Inc., supra* at 618, citing *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-150 (1989); *Glaz* v. *Ralston Purina Co.*, 24 Mass. App. Ct. 386, 389-390 (1987). It is likewise clear that Connolly knew MacCormack had filed a claim and knew retaliation was illegal. Cf. *Prader* v. *Leading Edge Prods., Inc., supra* at 619; *Brunner* v. *Stone & Webster Eng'g Corp.*, 413 Mass. 698, 704 (1992). What was never established is that MacCormack, as a result, suffered an "adverse employment action" which materially disadvantaged him.

Our own careful review of the record shows no more than this: MacCormack's department was in a state of flux due to a reorganization prompted in part by Kehoe's retirement. Duties were rearranged and new reporting structures devised. Some persons were brought in from other parts of the company to share some of the work previously assigned in part to MacCormack and he in turn was assigned some tasks previously done by others. When we put aside MacCormack's complaint that he had not been promoted to Kehoe's position, which was the subject of his unsuccessful age discrimination claim, MacCormack's remaining complaints — which are the subject of the retaliation claim — amount to no more than subjective feelings of disappointment and disillusionment. He offered no objective evidence that he had been disadvantaged in respect to salary, grade, or other objective terms and conditions of employment. To buttress his position that the alterations in his work assignments were a demotion, MacCormack offered the testimony of a secretary in the Prudential Center office where he worked that she considered

him to be second in command. But this too was merely a subjective impression from an employee whose administrative support duties placed her in an office between the corporate security director and MacCormack, apart from the rest of the departmental offices, making it logical that MacCormack would be the employee she would turn to when the director was unavailable.

In the absence of direct proof of retaliation, a plaintiff may introduce relevant evidence such as the demonstration of a general practice and policy of retaliation, see *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, *supra* at 767. MacCormack attempted to establish such a pattern when he had Boston Edison's former corporate EEO officer testify that he had been dismissed after he filed an age discrimination case against Boston Edison in behalf of himself. Puma's testimony provided no evidence to support MacCormack's claim, as he himself noted that the reason for his dismissal was that his personal filing against Boston Edison created a conflict with his responsibilities as EEO officer and that he understood his dismissal to be lawful. See *Hochstadt* v. *Worcester Found. for Experimental Biology*, 545 F.2d 222, 231 (1st Cir. 1976) (examining the "requirements of the job"). Such evidence does not even suggest a pattern of retaliation.

MacCormack simply offered no substantial evidence to show that he had suffered any real harm, as opposed to his subjective feelings of disappointment and disillusionment. We agree with the judge that MacCormack has not succeeded in making out a prima facie case of retaliation.

## IV

Lastly, the plaintiffs assert that the judge made two other errors serious enough to require reversal.

First, the plaintiffs complain about the exclusion from evidence of an article that appeared in the Boston Sunday Globe a few weeks before Connolly was selected to be the new corporate security director. The article explored connections between the FBI and organized crime and featured a photograph of Connolly next to a photograph of a noted organized crime member. The article mentioned friction between Connolly and other law enforcement officials. The plaintiffs argue that this article should have been admitted in evidence in the age discrimination claim to refute one of the

reasons given for the selection of Connolly over MacCormack: that Connolly had more extensive relationships with members of the New England law enforcement community. The judge ruled that the article was inadmissible and then clearly stated that even assuming, arguendo, that the article was not inadmissible, its prejudicial value greatly outweighed whatever probative value it might have. "The determination whether relevant evidence is prejudicial and thus inadmissible is within the judge's discretion and not reversible on appeal in the absence of 'palpable error.' " *Commonwealth* v. *Filos*, 420 Mass. 348, 356 (1995), quoting *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990). There was no such error here. See *Commonwealth* v. *Stewart*, 411 Mass. 345, 356 (1991); *Maddocks* v. *Contributory Retirement Appeal Bd.*, 369 Mass. 488, 498 (1976).

The plaintiffs also argue that the judge should have recused himself from exercising any fact finding function in this case. In a side bar conference immediately after the conclusion of the trial, the judge asked the plaintiffs' counsel if they minded if he introduced himself to Connolly, who had been one of Boston Edison's witnesses. When the plaintiffs' counsel stated her concerns regarding the appearance of such a meeting, the judge agreed not to talk with Connolly but did go on to state that he had heard many great things about Connolly's service in the FBI and wanted to "tell Mr. Connolly that, I wish him the absolute best and that I'm a person who knows the great work he has done for our country, and I can tell you he's a great man." On the basis of this conversation, the plaintiffs contend that the judge was not sufficiently unbiased to evaluate Connolly's actions toward MacCormack.

We reject this claim. Throughout the trial, the judge repeatedly paid many compliments to everyone involved in the proceeding: the attorneys, the witnesses, and the jury. While the judge's remarks regarding Connolly were unusual and even imprudent, this conversation, in isolation, does not warrant the conclusion that the judge was unable to exercise impartial judgment in this case. See *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 218 (1986) (advocating "consideration of the whole record"). "Discharge of a judge from a case after hearings have begun is unusual and ought not to be done in the absence of compelling reasons." *Edinburg* v. *Cavers*, *supra* at 217, citing *Dittemore* v. *Dickey*, 249 Mass. 95, 99 (1924).

See also *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 740-741 (1980). "Recusal is a matter within the judge's 'sound discretion,'" *Azarian* v. *Ettinger*, 13 Mass. App. Ct. 1077, 1077 (1982), quoting *Commonwealth* v. *O'Connor*, 7 Mass. App. Ct. 314, 320 (1979), and we cannot say that the judge abused his discretion, *King* v. *Grace*, 293 Mass. 244, 247 (1936), particularly as we ourselves have carefully considered the evidence and reached the same conclusion that the plaintiffs have offered insufficient evidence to withstand a judgment notwithstanding the verdict.

The judgment of the Superior Court is affirmed.

*So ordered.*