Kern, Leila R., J.
INTRODUCTION
This action arises from Cassandra Matthews’s employment at Raytheon Co. Matthews avers that a series of interpersonal slights that occurred on the job have, in their totality, created a hostile work environment and reflect racial animus. She also asserts that she was discriminated against on the basis of race and sex in certain decisions regarding salary raises, bonuses, and eligibility for future promotion. Before this court is the defendants’ Motion for Summary Judgment. For the reasons that follow, that motion will be ALLOWED.[2]
BACKGROUND
The factual assertions submitted in this matter are too numerous to comprehensively recount in this Memorandum of Decision. This court will focus on the most pertinent undisputed facts and present them as representative of several other facts which are not significant enough, if at all, to affect this court’s decision.
The following undisputed facts are taken from the parties’ respective Statements of Undisputed Material Fact submitted pursuant to Superior Court Rule 9A(b)(5). Unless otherwise noted, such facts are undisputed.[3] Matthews was hired as the Vice President of Information Systems Strategy (also referred to in the parties’ submissions as the Corporate IT department) on or about March 29, 2005.
While negotiating for that position, Matthews asserts that she “understood” that she would be hired to succeed Rebecca Rhoads as Chief Information Officer at Raytheon, but there is no evidence in the summary judgment record that anyone from Raytheon made any promises to Matthews about future promotion. Furthermore, Raytheon expressly rejected a request from Matthews that her employment agreement include a provision that she would be entitled to severance pay and other compensation if she were not promoted to CIO within eighteen months. Moreover, Matthews testified at deposition that, in coming to Raytheon, she “took the risk” of not being promoted.
Rhoads, as CIO for Raytheon, is Matthews’s immediate supervisor. She made the decision to hire Matthews. Rhoads oversees the Corporate IT Department. Rhoads supervises several employees at Matthews’s level in the Raytheon reporting structure, including other black and female employees.
Barbara Wilhelm was the Human Resources officer assigned to support Matthews. Wilhelm is responsible for assisting Rhoads, Matthews, and other Raytheon executives in the Corporate IT Department with compensation decisions, staffing, executive coaching, employee relations, and performance evaluations.
After being hired by Raytheon, Matthews’s total compensation was higher than any other employee at her level in the corporate hierarchy. From Matthews’s time of hire until the present day, Rhoads has continued as CIO at Raytheon, and thus there has been no occasion to make a final decision on whether or not to promote Matthews to that position.
Matthews alleges that a series of “micro-inequities” have combined to create a hostile work environment at Raytheon. Matthews asserts that Rhoads was not available often enough to help with Matthews’s orientation at Raytheon, did not introduce her to some Raytheon executives, and over the course of approximately four years, cancelled at least five meetings with Matthews.
In May 2005, Matthews said at an offsite company meeting that she did not feel included at Raytheon, and made other criticisms of Rhoads’s leadership. After that meeting, Wilhelm criticized Matthews for her public negativity. In addition, Matthews believes that Rhoads avoided interacting with her after this meeting because of her remarks.[4]
Around that same time, Matthews alleges that Wilhelm blamed her management style for the health problems of some of Matthews’s employees. Wilhelm also brought complaints to other Raytheon officials about Matthews, saying that Matthews was difficult to interact with.
*489 In June 2005, Matthews organized an “IT Strategy Summit” meeting. Matthews avers that Rhoads sabotaged the IT Strategy Summit by scheduling another meeting of her own on the same day. Later in June 2005, Matthews received a performance review that indicated that she was not “ready now” to be promoted to Rhoads’s position as CIO. A less-experienced white male candidate received a “ready now” performance review.
In September 2005, Matthews was assigned an “executive coach.” Matthews says that she felt this gesture was an insult to her abilities, while Raytheon has offered testimony that assignment to executive coaches is meant to be a “perk,” not a disciplinary sanction, and that Rhoads herself was assigned an executive coach during her tenure at Raytheon. The executive coach reviewed Matthews favorably and ascribed her difficulties at Raytheon to her relationships with Rhoads and Wilhelm. Rhoads and/or Wilhelm made some attempt to influence the outcome of the coaching report to be more critical of Matthews.
In 2007, Matthews designed new protocols for interviewing candidates for positions in her department. Wilhelm repeatedly refused to follow them. In April 2007, Wilhelm opposed Matthews’s recommendation to promote a member of her team, Brenda Horn. At a subsequent meeting about Horn’s promotion, Matthews and Wilhelm engaged in a public confrontation, during which Matthews accused Wilhelm of neglecting to provide her with certain information relevant to the decision to promote Horn. After discovering that Wilhelm had in fact e-mailed her the information she thought she was missing, Matthews apologized to Wilhelm.
On April 30, 2007, Rhoads rated Matthews as “ready in one to two years” for promotion. During a meeting to discuss her performance review, Rhoads criticized Matthews’s conflict management skills and other elements of her performance. Rhoads also informed Matthews that she would be receiving a 3.8% salary raise instead of the customary 4.5% raise, and a bonus stock award of 2,000 shares, instead of the customary 2,200 shares. Matthews’s “360 review,” which evaluated her performance during the same time period, but was conducted by Raytheon personnel besides Rhoads and Wilhelm, was more favorable than her performance review by Rhoads.
On May 5, 2007, Matthews confronted Rhoads and accused her of treating Matthews differently because she was a black woman. The two argued and Rhoads made reference to Matthews’s tendency to publicly disagree with her.
On May 7, 2007 Wilhelm complained to Raytheon’s ethics department about Matthews, citing numerous grievances including the confrontation at the meeting about Horn’s promotion and Matthews’s conduct at the offsite meeting in May 2005. Wilhelm also accused Matthews of behaving abusively toward her in front of other Raytheon employees. No ethics violation was found.
In July 2007, Matthews was given another performance evaluation that rated her, again, as “ready 1-2 years” for promotion. In November 2007, Matthews sent Raytheon a demand letter alleging discrimination and a hostile work environment. In response, Raytheon reassigned Wilhelm to support other executives besides Matthews, and assigned Hilda Haddock to Matthews as a replacement for Wilhelm. Matthews does not note any interpersonal conflict between herself and Haddock. In addition, Raytheon arranged an independent investigation into Matthews’s allegations, conducted by the law Arm of Day Pitney, LLP. No discrimination was found.
DISCUSSION
1. Standard
The familiar standard governing motions for summary judgment provides that summary judgment shall be granted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter oflaw. Mass.R.Civ.P. 56(c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 423 (1983). In assessing the record on a motion for summary judgment, all reasonable inferences are drawn in favor of the nonmoving party. Terra-Nova v. Fray-Witzer, 449 Mass. 406, 411 (2007). Furthermore, this court remains mindful that where, as here, a claim turns on a question of intent or state of mind, summary judgment is usually disfavored. White v. Seekonk, 23 Mass.App.Ct. 139, 141 (1986). However, even where state of mind is at issue, a plaintiff may not rely “merely upon conclusory allegations, improbable inferences, and unsupported speculation” to defeat summary judgment. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).
2. Discrimination and hostile work environment claims
“[T]he central focus of inquiry” concerning claims brought pursuant to G.L.c. 151B “is whether the employer penalizes some employees or prospective employees because of their race, color, religion, sex, or national origin.” Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66, 89 (1992), citing Sch. Comm. of Braintree v. Mass. Comm’n Against Disc., 377 Mass. 424, 428 (1979). Thus, Matthews must show that discriminatory animus was the motivation for Raytheon’s employment actions; membership in a protected class, without more, is insufficient. Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 778 (2001).
Matthews supplies a great deal of largely unsupported, conclusory statements in an effort to show discriminatory animus, alleging that “Raytheon is a hierarchical organization dominated by white males,” that its “culture constantly undermines and tests its employees of color to make sure they are conforming,” *490 that “[f]rom the day Matthews began at Raytheon, Rhoads set her up to fail,” and that “Matthews ... does not play the accepted role for black employees at Raytheon in that she speaks out.” However, the summary judgment record does not support Matthews’s self-serving characterizations of Raytheon.
To the extent Matthews relies on Rhoads’s purported animus, Raytheon is entitled to an inference that Rhoads’s conduct was not discriminatory, because it was she who hired Matthews, knowing she was a black woman. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993). Additionally, Rhoads supervises other black and female employees, none of whom have become embroiled in these kinds of personal feuds with her.
Matthews also references evidence of hostility and antagonism between herself, Rhoads, and Wilhelm. At best, that evidence suggests that Rhoads and Wilhelm treated Matthews unfairly; absent from this picture is any reason to infer that Rhoads’s and Wilhelm’s motivation for doing so was based on racial animus. See, e.g, Collison v. Sun Microsys., Inc., Civil Action No. 02-5302, 2004 WL 2750849 *2 (Mass.Super.Ct. Nov. 17, 2004) (Brassard, J.) [18 Mass. L. Rptr. 479].
Therefore, Matthews’s claims for race and sex discrimination, and hostile work environment, fall because she cannot come forward with evidence of discriminatory animus.
3. Retaliation claims
In order to support her retaliation claims under G.L.c. 15 IB, Matthews must show a materially adverse employment action.[5] MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996). Actionable adverse employment actions typically pertain to “salary, grade, or other objective terms and conditions of employment.” Id. at 663. The “micro-inequities” born of Matthews’s antagonistic relationships with Rhoads and Wilhelm do not constitute materially adverse employment actions because they did not affect the objective terms of Matthews’s employment; subjective feelings of tension, hostility, or unwelcome sentiments are insufficient. See Bain v. City of Springfield, 424 Mass. 758, 766 (1997).
Wilhelm’s complaint to the ethics department does not support Matthews’s retaliation claim. Wilhem’s complaint did not materially alter the terms and conditions of Matthews’s employment. The ethics investigation found no violation on Matthews’s part.[6]
In addition, Matthews’s position in the lineup of potential candidates for promotion to Rhoads’s position as CIO does not qualify as a materially adverse employment action. See Kruger v. Principi, 420 F.Sup.2d 896, 917 (N.D.Ill.2006); see generally Ramos v. Roche Prods., Inc., 936 F.2d 43, 47 (1st Cir. 1991). A possible future adverse employment action is not sufficient grounds for a present employment discrimination claim. See Collison, 2004 WL 2750849 at *2.
One might argue that Matthews’s salary and bonus award in 2007 constituted an adverse employment action, though whether it would rise to the level of material is questionable. More problematically, the salary and bonus award cannot support any of Matthews’s claims. It cannot support a claim for discrimination because, as noted above, Matthews has not put forth any evidence of discriminatory animus. It cannot support a claim for retaliation because Matthews’s salary increase and bonus had already been determined by April 2007 at the latest; Matthews’s protected activity took place in May 2007 at the earliest. Therefore, it is impossible to conclude that her salary increase and bonus reflected retaliatory animus, because they predated any of her protected activity.
4. Equal Rights Act
“The application of the MERA in the employment context ... is quite limited by the Supreme Judicial Court’s 1994 holding that Massachusetts General Laws chapter 15IB, where it is applicable, provides the exclusive remedy available to discrimination complainants in the employment context.” 45 Scott C. Morieraty et al., Massachusetts Practice, §10.1, at 628 (2003 ed. & 2008 supp.), citing Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994). See also Cargill v. Harvard Univ., 60 Mass.App.Ct. 585, 604 (2004). Because claims under c. 15 IB were available to Matthews, they are her exclusive remedy and she has no claim under the MERA.
ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment is, in all respects, ALLOWED.

There are several ancillary motions pending to strike certain evidentiary submissions, for discovery sanctions, and for additional discovery pursuant to Mass.R.Civ.P. 56(f). All such ancillary motions are denied.

Where the parties have not controverted opposing statements of fact in a manner that complies with Rule 9A(b)(5), this court has discretion to deem those facts admitted. Nevertheless, this court has reviewed the summary judgment record in search of admissible evidence that would create a genuine dispute of material fact, and has found none. See, e.g., DSF Investors, LLC v. Lyme Timber Co., Civil Action No. 02-4042, 2004 WL 3414427 *1 n.2 (Mass.Super.Ct. Dec. 22, 2004) (Botsford, J.) [19 Mass. L. Rptr. 411).

Matthews has testified that she “owns” some of the responsibility for tensions between herself and Rhoads, because she “behaved in a way that was counter-cultural" in publicly criticizing Rhoads.

A materially adverse employment action is also required to make out a claim for discrimination under G.L.c. 15 IB.

Moreover, there is no evidence that Wilhelm knew of Matthews’s protected activity in her meeting with Rhoads in May 5, 2007. Without such knowledge, there is no reason to infer that Wilhelm’s conduct was motivated by retaliatory animus, instead of her antagonistic relationship with Matthews.