RACHID KARATIHY *vs.* COMMONWEALTH FLATS
DEVELOPMENT CORP.[1]

No. 12-P-1353.

Suffolk. June 4, 2013. - September 18, 2013.

Present: CYPHER, GRAHAM, & AGNES, JJ.

*Employment,* Termination, Retaliation. *Practice, Civil,* Prima facie case.

In a civil action in which the plaintiff alleged that his termination from his
    employment was the result of retaliation by the defendant employer for the
    plaintiff's being a named plaintiff in a separate lawsuit claiming that the
    employer violated the Wage Act and the Tips Act, the judge properly
    granted summary judgment in favor of the employer, where the plaintiff
    failed to demonstrate that the termination was causally related to his
    protected activity of participating in the separate lawsuit. [255-257]

CIVIL ACTION commenced in the Superior Court Department on
November 24, 2009.

The case was heard by *Geraldine S. Hines,* J., on a motion
for summary judgment, and a motion to reconsider was
considered by her.

*Scott Adams* for the plaintiff.

*Andrew C. Pickett (Kevin M. Sibbernsen* with him) for the
defendant.

CYPHER, J. A Superior Court judge granted summary judg-
ment in favor of Commonwealth Flats Development Corp.,
doing business as Seaport Hotel and World Trade Center
(hotel), after Rachid Karatihy filed a complaint alleging retali-
ation by the hotel. Karatihy alleged that the hotel terminated
him in retaliation for being a named plaintiff in a lawsuit
claiming that the hotel violated G. L. c. 149, §§ 148 & 150
(Wage Act), and c. 149, § 152A (Tips Act).

The judge ruled in favor of the hotel because Karatihy did

---

[1]Doing business as Seaport Hotel and World Trade Center.

not meet his burden on causation, and thus would be unable at trial to prove an essential element of the retaliation claim. Karatihy maintains that there are disputes of material fact and there was sufficient evidence for a jury to find a causal connection and pretext for his termination, and therefore summary judgment was not proper. We disagree and affirm summary judgment for the hotel.

*Background.* We summarize the facts in the light most favorable to the nonmoving party, Karatihy, reserving some facts for later discussion. See *Chervin* v. *Travelers Ins. Co.*, 448 Mass. 95, 96 (2006).

Karatihy worked as a banquet server at the hotel from 2000 until his termination in 2009. As a server, his duties included setting up for events and serving food and beverages. Because attendance is imperative to the job and efficiency is key in serving its customers, the hotel implemented an attendance policy. Employees are required to "call-out" and notify the hotel at least four hours in advance if they will be late or will miss a shift so the hotel can find a replacement. All of the "call-outs" are recorded and tracked for each employee. The attendance policy also placed limits on the number of allowable absences in a given period. This attendance policy is located in the hotel's employee handbook, of which Karatihy acknowledged receipt on November 21, 2000, and again on January 20, 2006.

Karatihy did not comply with the policy and began to have attendance issues in 2005, receiving his first written warning on August 30, 2006, and a second on September 7, 2007. After receiving multiple additional warnings and poor yearly evaluations because of his attendance, and after violating the attendance policy through the next two years, Karatihy was terminated in August, 2009.

In December, 2007, Karatihy became a named plaintiff in a suit brought by banquet workers against the hotel for violating their rights under the Wage Act and the Tips Act. The lawsuit was settled in favor of the banquet workers in May, 2009, and the award was dispersed in August of the same year.

No other named plaintiffs from the Wage Act and Tips Act suit have been terminated since the conclusion of the lawsuit.

Other employees having attendance and tardiness issues have been terminated according to the records provided by the hotel.

*Discussion.* Summary judgment decisions are reviewed de novo to decide "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991).

Karatihy argues that he was treated differently while the lawsuit was pending,[2] that the hotel selectively enforced its attendance policy by terminating him but not others with similar violations, and that the hotel's attendance records are incorrect. Karatihy's arguments are deficient in showing causation, an essential element of a retaliation claim, even when the facts are viewed in the light most favorable to his case. The hotel demonstrated that Karatihy could not prove the essential elements of the claim at trial. See *Opara* v. *Massachusetts Mut. Life Ins. Co.,* 441 Mass. 539, 544 (2004) (summary judgment appropriate when moving party demonstrates that nonmoving party has no reasonable expectation of proving essential elements of claim at trial).

The elements Karatihy must establish to prove a retaliation claim are that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity. *Mole* v. *University of Mass.,* 442 Mass. 582, 591-592 (2004). The first element, participating as a named plaintiff in the lawsuit, and the second element, being terminated from his job, are not disputed by either party. Karatihy argues that there is sufficient evidence to show that the protected activity caused the adverse action, while the hotel maintains that there is no proof in the record to demonstrate causation.

"[T]he mere fact that one event followed another is not sufficient to make out a causal link." *Id.* at 592, quoting from *MacCormack* v. *Boston Edison Co.,* 423 Mass. 652, 662 n.11 (1996). That an employer knows of an employee's protected activity and thereafter takes some adverse employment action against that employee does not, alone, establish causation. *Ibid.*

---

[2]He alleges that he was given more work and fewer hours, and that the managers had people following him.

Otherwise, an employee could inhibit a "well-deserved discharge" by participating in protected activity. *Ibid.*

Here, causation cannot be inferred by a jury because Karatihy violated the attendance policy before and during his protected activity, see *id.* at 594 (no causation inference when adverse employment actions predated protected activity); others not named in the lawsuit were terminated for violating the policy, contrast *O'Brien* v. *Massachusetts Inst. of Technology*, 82 Mass. App. Ct. 905, 907 (2012) (evidence of different standards for plaintiff); and, according to the hotel's records, no other named plaintiffs in the lawsuit have been terminated.

As support for his position, Karatihy points to *O'Brien*, where the employee "presented sufficient evidence to send" his retaliation claim to a jury, and summary judgment for the employer was vacated. *Id.* at 905. In *O'Brien*, the employee received only one disciplinary action in the eight years before he filed a complaint with the United States Department of Labor, but received a number of verbal and written warnings after filing the complaint. *Id.* at 906-907. The "unacceptable" conduct that occurred after the protected activity was one that other employees also had done, but for which none had been terminated; in fact, the conduct was "common practice" for other employees. *Ibid.*

In contrast, Karatihy violated the hotel's attendance policy multiple times before becoming involved with the protected activity, and continued to violate the policy multiple times during and after the suit. He received numerous warnings in writing, with two being called a "final written warning." See *Mole*, *supra* at 600-602 (directed verdict for employer proper where employee received multiple subpar evaluations before and during his protected activity, resulting in his termination, and was not able to prove causation). Furthermore, when other employees of the hotel violated the attendance policy, they too were terminated.

All of Karatihy's evidence comes from his deposition and his bare assertions. Contrast *O'Brien*, *supra* (another employee submitted affidavit stating there were different standards for O'Brien compared to standards for coworkers). Karatihy has nothing to support his claims, and the Supreme Judicial Court has held that "the bare assertion of inferences . . . raises no

genuine issue of material fact." *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 559 (1976). No other employees involved in the lawsuit came forward to report that they had been treated differently or that they had information of Karatihy being treated differently. In addition, while Karatihy points to erroneous record-keeping by the hotel, he presents no evidence of errors.

We see no viable way to infer causation. Karatihy has no expectation of proving that his involvement in a protected activity caused a retaliatory adverse action.[3]

*Judgment affirmed.*

*Order denying motion for reconsideration affirmed.*

---

[3]The hotel argues that even if Karatihy presented sufficient evidence of the required elements for his retaliation claim, he also must show that the hotel's reason for the adverse employment action was a pretext for retaliation under the established three-step order of proof. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 441-445 (1995); *Abramian* v. *President & Fellows of Harvard College,* 432 Mass. 107, 116-118 (2000). See also *Smith* v. *Winter Place LLC,* 447 Mass. 363, 364 n.4 (2006) (court found "no reason to interpret the retaliation provision of the wage laws differently" from antidiscrimination retaliation laws under G. L. c. 151B). Because Karatihy did not prove the prima facie case for retaliation, we need not address this issue.