Following the termination of her employment on January 6, 2012, the plaintiff, Mary T. Bradley, filed a complaint against her former employer, Quincy Community Action Programs, Inc. (QCAP), and QCAP's chief executive officer, Beth Ann Strollo (collectively, defendants), alleging retaliation in violation of G. L. c. 149, § 148A, and G. L. c. 151, § 19 (counts 1 and 2, respectively). The complaint also alleged wrongful termination in violation of public policy (count 3) and tortious interference with employment against Strollo, individually (count 4).[3]
The defendants moved for summary judgment, asserting that Bradley's employment was terminated for lawful reasons and not because Bradley had engaged in protected activity. Strollo also moved for summary judgment on count 4 on the ground that Bradley failed to produce any evidence that Strollo acted with malice toward Bradley. In a thorough memorandum of decision and order, a judge of the Superior Court granted summary judgment on all counts. For the reasons that follow, we affirm.
Background. We set forth the facts in the light most favorable to Bradley.[4] See Lyons v. Nutt, 436 Mass. 244, 245 (2002). QCAP is a nonprofit corporation located in Quincy. Its mission is to reduce poverty and assist low-income individuals become self-sufficient through several programs, one of which is the operation of a food center, which is commonly referred to as the emergency food center (EFC or center). The EFC provides fresh and perishable foods to clients in the surrounding communities. In 2006, QCAP hired Bradley, who had previously worked for QCAP in other capacities, as the EFC coordinator. Her responsibilities included, among others, supervising and scheduling employees and volunteers, recruiting volunteers, maintaining food orders and supplies for clients, scheduling deliveries, and approving employee time cards. For Bradley's position, QCAP budgeted for forty hours per week with a thirty minute unpaid lunch break. The EFC is open from 9:00 A.M. to 4:30 P.M. Clients of the EFC could either sign up for a scheduled pick up at the center or walk in during the hours of operation. Most of the food the EFC provided its clients was supplied by the Greater Boston Food Bank (GBFB). During the holidays, EFC administered additional assistance to its clients, including gift cards and toys that were donated by individuals and local businesses.
In April of 2011, a Blue Cross and Blue Shield (BCBS) coordinator complained to QCAP about Bradley's treatment of its volunteers. The coordinator reported that Bradley was not present when volunteers arrived and did not have scheduled activities for them to perform. Strollo met with Bradley to discuss the complaint and remind her of the importance of volunteers and the need to schedule appropriate activities for them.
Additional incidents that caused Strollo to become concerned about Bradley's suitability to run the EFC occurred between April and the end of the year. In mid-October of 2011, Bradley failed to promptly inform Strollo of a $10,000 donation from the mayor and a ward councillor. As a result of Bradley's delay in conveying the message, Strollo did not thank the mayor for the gift at a community event that they both attended. Bradley subsequently acknowledged that "it would have been better" if Strollo had been aware of the information earlier.
Then, on or about October 24, 2011, Strollo contacted Bradley about an upcoming television program on the EFC. Strollo asked if the EFC was sufficiently stocked with food, to which Bradley responded that it was not. Bradley also indicated that she did not believe she would be able to arrange for additional food for the television program, stating "volunteers come and go." Strollo interpreted this comment as an expression of indifference and considered it disparaging to the volunteers. Around the same time, Strollo observed that Bradley closed the center at midday. Bradley claimed that she closed the center so that employees could take an uninterrupted lunch. Strollo instructed Bradley to keep the center open and directed her to stagger employee lunches so as to avoid closing the facility.
Thereafter, on October 27, 2011, Strollo issued a written warning to Bradley. The warning was based on the complaint lodged by the BCBS coordinator in April of 2011, Bradley's failure to timely communicate the donation from the mayor and a ward councillor, the closing of the EFC at midday, and the planning and communication in connection with the television program. The warning indicated that Bradley's performance and attitude were unacceptable and that she could be terminated from employment if she continued this conduct. In addition to the warning, Strollo required Bradley to prepare a performance improvement plan. Bradley did so and, among other things, stated that the midday closure was "resolved."
Additional incidents occurred after the warning was issued. In November of 2011, Bradley provided Strollo with inaccurate information regarding the number of gifts available for distribution to the clients. Bradley informed Strollo that there were 100 to 150 gifts, but Strollo found 800 to 1,000 gifts in the basement of the center. Next, Strollo learned that supermarket gift cards were expiring before distribution. Bradley acknowledged that the cards had expired, but explained that grocery stores still recognized the cards. Bradley also submitted some questionable and untimely expenses for reimbursement, some of which, contrary to QCAP policy, did not include receipts.
Meanwhile, on November 28, 2011, Bradley filed a grievance with QCAP's personnel committee challenging the written warning. Bradley contended that her actions warranted an oral warning only and requested that the written warning be removed from her personnel file. A grievance hearing was held on January 3, 2012. At the hearing, Bradley acknowledged that Strollo told her to stagger lunch breaks, but claimed that she could not do so, and as a result neither she nor other employees had a proper meal break. She also expressed her view that she could not communicate with Strollo. The grievance was denied.
The following evening, on January 4, a QCAP board member was driving past the center after operating hours and noted that the lights were on, Bradley was present, and Bradley appeared to be removing materials from the center. After contacting Strollo, the board member (along with a management team member) confronted Bradley at the center and asked for her keys. Strollo had already scheduled a meeting with Bradley for two days later, but Bradley refused to attend the scheduled meeting with Strollo, purportedly because Bradley feared for her personal safety. Strollo then terminated Bradley's employment.
Discussion. We review a grant of summary judgment de novo to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Karatihy v. Commonwealth Flats Dev. Corp., 84 Mass. App. Ct. 253, 255 (2013), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
1. Retaliation in violation of G. L. c. 149, § 148A (count 1). Under G. L. c. 149, § 148A, employees are protected against retaliation by their employers for exercising their rights under the chapter's wages and hours provisions. Bradley alleges that the defendants terminated her employment because she asserted her rights and those of her staff under G. L. c. 149, § 100, for a meal break.[5] We agree that summary judgment was proper but for reasons slightly different than those relied on by the judge.
Bradley bears "the burden of establishing a prima facie case of retaliation, and, in the wake of the defendants' introduction of nonretaliatory reasons for the various actions taken, the burden of proving that the articulated nonretaliatory reasons were pretext." Mole v. University of Mass., 442 Mass. 582, 591 (2004). A prima facie case is established with evidence that the plaintiff "engaged in protected conduct, ... suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.' " Id. at 591-592, quoting Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991). The mere fact that the adverse action followed protected conduct "is not sufficient to make out a causal link." MacCormack v. Boston Edison Co., 423 Mass. 652, 662 n.11 (1996).
We conclude that Bradley did not establish a prima facie case for retaliation because no jury could reasonably find that the adverse action, termination of employment, was causally related to Bradley's assertion of her right to a meal break. Bradley's work performance issues began in early 2011, which predated her complaint about meal breaks. In addition, new issues arose after Strollo issued a written warning. Thus, although Bradley's termination of employment occurred weeks after she first raised concerns regarding meal breaks, the requisite causal connection may not be inferred from the timing of events. See Mole v. University of Mass., 442 Mass. at 591-594, and cases cited. To the extent that Bradley subsequently informed Strollo and the personnel committee that staggering lunch breaks was "impossible," Bradley admitted that she had not attempted to comply with the directive. At her deposition, she explained that she had "no time to attempt it," and that there was not enough staff to allow for staggered breaks. However, in the parties' joint disputed and undisputed statement of facts, Bradley agreed that Michelle Call-Gomes, another EFC employee, was able to take breaks when Bradley was present. Moreover, the scheduling of employees and volunteers was part of Bradley's job duties. On this record, Bradley cannot show that the defendants' "desire to retaliate against [her was] ... a determinative factor in [the] decision to take adverse action." Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011). Where Bradley failed to offer adequate proof of an essential element of her retaliation claim, summary judgment was appropriate. See Smith v. Winter Place LLC, 447 Mass. 363, 364 n.4 (2006) ; Mole v. University of Mass., 442 Mass. at 591-592.
2. Wrongful termination in violation of public policy (count 3). As noted, Bradley sought relief under G. L. c. 149, § 148A, for asserting her statutory rights under § 100 (Wage Act claim). The statute affords a "comprehensive and adequate remedy for employer retaliation" (quotation omitted). Gillis vs. Lowell Health Care Ctr., U.S. Dist. Ct., No. 16-10497-NMG, slip op. at 11 (D. Mass. July 29, 2016). To the extent Bradley's claim of wrongful discharge in violation of public policy is based on her Wage Act claim, it is precluded. See id. at 10-11.
Bradley also claimed that she was unlawfully discharged for complaining about her "forceful" removal from the premises, which placed her "in fear for her personal safety and well-being." However, even assuming the veracity of these facts, Bradley has not identified how they implicate well-defined, public policy concerns. See Shea v. Emmanuel College, 425 Mass. 761, 762-763 (1997). In any event, given the undisputed series of performance issues, Bradley's claim fails as a matter of law for lack of adequate proof of causation. See Mello v. Stop & Shop Cos., 402 Mass. 555, 558, 561 (1988) (employee failed to prove that employer would not have discharged him but for conduct protected by public policy). Accordingly, the defendants were entitled, as a matter of law, to summary judgment on the wrongful termination in violation of public policy claim as set forth in count 3.
3. Tortious interference with employment (count 4). Bradley failed to address her claim of tortious interference with employment in her brief. The claim is deemed waived on that basis. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 n.1 (2005). In any event, were we to reach the merits, we would conclude that summary judgment was appropriate. To prove tortious interference with employment, Bradley must prove that (1) "she had an advantageous employment relationship with her employer"; (2) Strollo "knowingly" induced QCAP to terminate the relationship; (3) Strollo's interference was "improper in motive or means"; and (4) Strollo's actions harmed Bradley. See Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001). Where the claim of tortious interference with employment is asserted against a corporate official, Bradley must also show that " 'actual' malice" was a "controlling factor" because " 'implied malice' is not sufficient." Id. at 781-782, quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981), S.C. 391 Mass. 333 (1984). Here, no jury could reasonably find that Strollo was motivated to terminate Bradley by actual malice, as that term is defined in this context. See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014), quoting Psy-Ed Corp. v. Klein, 459 Mass. at 716 ("a spiteful, malignant purpose, unrelated to the legitimate corporate interest").
4. Remaining claims. We briefly address Bradley's remaining claims of error. Bradley points out the existence of a number of factual disputes apparent in the record. However, the disputes and factual matters concern immaterial issues and thus were inadequate to stave off the grant of summary judgment. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). We do not consider any other claims Bradley purports to raise because, so far as it appears, they were either made for the first time on appeal, see Cariglia v. Bar Counsel, 442 Mass. 372, 379 (2004), or do not rise to the level of adequate appellate argument required by our procedural rules, see Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014).
Judgment affirmed.

Count 2 was dismissed as time barred by a different judge than the one who decided the motion for summary judgment that is at issue on appeal. It is unclear whether Bradley appeals from the dismissal of this count, but as she does not address the issue in her brief, we consider any arguments related to count 2 as waived. See Kilnapp Enters., Inc. v. Massachusetts State Auto. Dealers Ass'n., 89 Mass. App. Ct. 212, 222 n.4 (2016).

Bradley was represented by counsel in the trial court, but proceeds pro se in this appeal. Our review of her claims is hampered by the failure to provide us with a complete copy of the summary judgment record. Many documents, including affidavits, performance evaluations, and Bradley's job description submitted in support of and in opposition to the defendants' motion were omitted. As the appellant, Bradley has the duty to produce a record that supports her claims of error. See Arch Med. Assocs., Inc. v. Bartlett Health Enters., Inc., 32 Mass. App. Ct. 404, 406 (1992). A party's pro se status does not excuse noncompliance with our procedural rules. See Mains v. Commonwealth, 433 Mass. 30, 36 (2000). Given the absence of material documents, we have relied heavily on the judge's summary of undisputed facts and the parties' statements of undisputed facts.

The statute sets forth: "No person shall be required to work for more than six hours during a calendar day without an interval of at least thirty minutes for a meal. Any employer, superintendent, overseer or agent who violates this section shall be punished by a fine of not less than three hundred nor more than six hundred dollars." G. L. c. 149, § 100.